**Michael V. MATSON, Petitioner,**

v.

**MICHIGAN PAROLE BOARD,**
**Respondent.**

No. 00–70934.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 30, 2001.

Michael Matson, Gus Harrison Correctional Facility, Adrian, MI, pro se.

Janet Van Cleve, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for respondent.

## OPINION AND ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE

COHN, District Judge.

### I. *Introduction*

Petitioner Michael V. Matson, a state inmate currently incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court DISMISSES the petition without prejudice.

### II. *Procedural History*

In 1986, Petitioner pleaded *nolo contendere* in Saginaw County Circuit Court to three counts of manslaughter with a motor vehicle. He was sentenced to four to five years imprisonment. In 1988, he was convicted of prison escape and sentenced to one to five years imprisonment. In 1991, Petitioner was released on parole.

In 1992, Petitioner was convicted in Saginaw County Circuit Court of carrying a concealed weapon. He was sentenced to three to five years imprisonment and his parole was revoked.

He was released on parole again on June 13, 1995. In December 1995, Petitioner's parole was revoked based on a positive cocaine test, failure to report to parole officer, failure to report a change of address, and attempting to cash stolen checks. He was also convicted of uttering and publishing and sentenced to one year imprisonment for that offense.

On December 11, 1998, Petitioner was denied parole by the Michigan Parole Board on the ground that there was "a high probability of committing a new violent offense on parole." Petitioner filed an application for leave to appeal the parole board's decision to the Saginaw County Circuit Court. On November 18, 1999, the Saginaw County Circuit Court denied leave to appeal. *Matson v. Michigan Parole Board*, No. 99–026602 (Saginaw County Circuit Court Nov. 18, 1999). Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The application for leave to appeal was returned on February 29, 2000, for failure to pay the filing fee. *Matson v. Michigan Parole Board*, No. 223905 (Mich.Ct.App. Feb. 29, 2000).

On October 22, 1999, Petitioner was once again denied parole by the Michigan Parole Board on the ground that there was "a high probability of committing a new violent offense on parole." On November 22, 1999, Petitioner filed an application for leave to appeal the parole board's denial of parole. On April 5, 2000, the case was dismissed for lack of service. *Matson v. Michigan Parole Board*, No. 99–031006 (Saginaw County Circuit Court Apr. 5, 2000).

On February 22, 2000, Petitioner filed the pending petition for a writ of habeas corpus challenging the Michigan Parole Board's denial of parole in 1998 and 1999. Petitioner presents the following claims for habeas corpus relief:

I. The Michigan legislatures' enactment of 1999 PA 298 violates "equal protections clauses" of state and federal constitutions.

II. The Michigan legislatures' enactment of 1999 PA 4475 violates the "equal protections clauses" of state and federal constitutions.

III. The respondent's denial of parole, in part, based upon the petitioner's "physical and mental handicap" of "dysthymic disorder" violated the Rehabilitation Act of 1973(RHA), 29 U.S.C. § 794, and the Americans With Disabilities Act of 1990(ADA), 42 U.S.C. § 12131, *et seq.*

IV. The respondent's denial of parole, in part, based upon the petitioner's "physical and mental handicap" of being a former "drug addict" when he successfully completed a supervised drug rehabilitation program and is not in the current illegal used illicit drugs violated the Rehabilitation Act of 1973(RHA), 29 U.S.C. § 794, and the Americans With Disabilities Act of 1990(ADA), 42 U.S.C. § 12131, *et seq.*

### III. *Analysis*

In the instant petition for a writ of habeas corpus, Petitioner presents two fundamental arguments: (1) that the 1999 amendment to Mich. Comp. Laws § 791.234 violates the Equal Protection Clause; and (2) that the parole board's decision denying Petitioner release on parole violated the Rehabilitation Act of 1973 and the Americans With Disabilities Act of 1990. Respondent contends that Petitioner's claims are barred from review by this Court because they are procedurally defaulted.

■ The doctrine of procedural default provides:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady,* 456 U.S. 152, 167–69, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Simpson v. Sparkman,* 94 F.3d 199, 202 (6th Cir.1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust,* 17 F.3d at 162; *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■ For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Warner v. United States,* 975 F.2d 1207, 1213–14 (6th Cir.1992), *cert. denied,* 507 U.S. 932, 113 S.Ct. 1314, 122 L.Ed.2d 702 (1993). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546. "When a state court judgment

appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson*, 94 F.3d at 202.

The last state court to address Petitioner's appeal of the 1999 parole board decision, the Saginaw County Circuit Court, dismissed the appeal without prejudice, pursuant to Michigan Court Rule 2.102, for lack of service. Michigan Court Rule 2.102 permits a litigant to move to set aside a dismissal entered pursuant to this rule within twenty-eight days after notice of the order of dismissal is given. Based upon the record before the Court, it appears that Petitioner has not moved to set aside the order of dismissal.

Respondent argues that Petitioner's claims are procedurally defaulted because he failed to follow applicable procedures. However, a dismissal pursuant to M.C.R. 2.102 is without prejudice. Thus, absent other considerations regarding whether a Michigan prisoner may still file an appeal of a parole denial in state court, M.C.R. 2.102, by itself, is insufficient to establish procedural default.

However, because Petitioner's challenge to the parole board decision was dismissed in state court, Petitioner's claims have not yet been reviewed in state court. Accordingly, they are unexhausted.

This AEDPA requires that a petitioner exhaust all available state court remedies before seeking habeas corpus relief in federal court. The AEDPA, provides, in pertinent part:

(b)(1) An application for a writ of habeas corpus . . . shall not be granted unless it appears that:

(A) the applicant has exhausted the remedies available in the court of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure the question presented.

Thus, a prisoner challenging his confinement by way of a habeas corpus petition must exhaust his state court remedies prior to seeking federal habeas corpus relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir.1998); *see also Prather v. Rees*, 822 F.2d 1418, 1420 (holding that "[o]rdinarily, the state courts must have had the opportunity to pass on defendant's claims of constitutional violations"). "This rule of comity reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (internal quotation omitted). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather*, 822 F.2d at 1420, n. 3.

While § 2254(c) requires a petitioner to exhaust state court remedies before proceeding with a federal habeas corpus petition, exhaustion is not required where a remedy in state court is unavailable. *O'Sullivan v. Boerckel,* 526 U.S. 838, 847–48, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Accordingly, the Court will not dismiss a claim for failure to exhaust, where no avenue for exhaustion is available in state court or where such exhaustion undoubtedly would prove futile to Petitioner. Because Petitioner has failed to present the instant claims in Michigan state court, he has failed to exhaust his state court remedies. Thus, the Court must determine whether there exists any available state court remedy for him to exhaust.

Petitioner maintains that he is foreclosed from presenting his claims in state court because the 1999 amendment to Mich. Comp. Laws § 791.234, eliminated appeals by prisoners from the denial of parole. Prior to adoption of the 1999 amendment, § 791.234(8) provided, in pertinent part:

> The action of the parole board in granting or denying a parole is appealable by the prisoner, by the prosecutor of the county from which the prisoner was committed, or the victim of the crime for which the prisoner was convicted.

Mich. Comp. Laws § 791.234.

Public Act 1999, No. 191, amended § 791.234(8), to permit appeals of parole board decisions only by prosecutors and victims, and to eliminate such appeals by prisoners. The amendment also renumbered subpart (8) as subpart (9).

In its brief in opposition to the petition for a writ of habeas corpus, Respondent dispenses with Petitioner's claim that the amendment to § 791.234 prevents an appeal in state court by a prisoner from the denial of parole in a single sentence: "In any event, Petitioner cannot excuse his failure to follow the applicable rules governing appeals in the state courts by speculating that his appeal would have been dismissed anyway." Respondent's Brief at p. 3. In fact, the Court finds the question whether Petitioner is now barred from filing an appeal in state court central to a determination whether the petition must be dismissed for failure to exhaust state court remedies.

First, the Court considers whether the amendment to § 791.234 would be applied by Michigan state courts to Petitioner's appeal. Petitioner's appeal of the 1999 parole denial to Saginaw County Circuit Court was dismissed for lack of service on April 5, 2000. The 1999 amendment to § 791.234, which eliminated a prisoner's ability to appeal parole denials pursuant to that statute, became effective on March 10, 2000. Given that the parole denials at issue in this case pre-date the amendment's effective date, Michigan courts may apply the pre-amendment statute permitting appeals from parole denials to Petitioner's appeal. *See Gilmore v. Parole Board,* 247 Mich.App. 205, 635 N.W.2d 345 (2000) (applying pre-amendment § 791.234 to challenge of parole decision that was rendered prior to amendment's effective date); *Kent v. Michigan Parole Board,* 2000 WL 33406925, *1 (Mich.Ct.App. Sept.22, 2000) (same). Thus, Petitioner may have an avenue of appeal available in state court pursuant to the pre-amendment statute.

Even if Michigan courts hold that Petitioner may not appeal parole decisions pursuant to M.C.L. § 791.234(9), another avenue for review may be available to Petitioner in state court—an appeal pursuant to Section 631 of the Revised Judiciary Act.[1]

1. Section 631 of the Revised Judiciary Act states:

The legislative history of the amendment to Mich. Comp. Law § 791.234, supports the view that Section 631 of the Revised Judiciary Act remains a means of appeal for prisoners who were denied parole. Michigan's House Legislative Analysis Section's March 21, 2000 Report ("HLSA Report") on the proposed amendment stated that, although the proposed amendment eliminated a prisoner's appeal of a parole board decision under the Corrections Code, an avenue of appeal remained for prisoners:

[T]he bill still would leave prisoners recourse to appeal under the Revised Judicature Act (RJA), although the RJA has a higher burden of proof under an "abuse of discretion" standard. That is, the bill would leave intact a prisoner's right to appeal a parole denial under the RJA, but in order for the appeal to be successful, the prisoner would have [to] show competent, material and substantial evidence that the parole board's decision was not supported by the law. Consequently, the bill should cut down on the number of prisoner appeals, make it easier for the courts to dismiss cases that wouldn't meet this higher burden of proof under the RJA, and would make it easier and less expensive for the attorney general's office to respond to such appeals.

HLSA Report at p. 9.

Finally, in addition to challenging the parole board's decision to deny him parole, Petitioner challenges the constitutionality of the amendment to § 791.234. The state court may choose to address Petitioner's claim that the amendment is unconstitutional.

■ Thus, it appears to the Court that Petitioner has three potential avenues of review in state court: (i) the state court may apply the pre-amendment version of § 791.234 to Petitioner's claim; (ii) the state court may permit Petitioner to challenge the parole board's decision pursuant to Section 631 of the Revised Judiciary Act; and (iii) while perhaps declining to address the merits of Petitioner's challenge to the parole denial, the state court may, nevertheless, address Petitioner's claim that the amendment to § 791.234 is unconstitutional. The interest of comity between state and federal courts counsels in favor of allowing state courts the first opportunity to address claims such as those presented by Petitioner. Such restraint by federal courts is particularly prudent where there is some uncertainty as to the state court's interpretation of the contested statute. Thus, the Court will dismiss the petition without prejudice to permit Petitioner to exhaust available remedies in state court.

While the Court is constrained to dismiss the pending petition to allow Michigan courts the first opportunity to address Petitioner's claims, the Court notes that it is deeply troubled by the constitutional implications of the amendment to Mich. Comp. Laws § 791.234. Eliminating a prisoner's appeal of a parole board decision, but preserving such an appeal by victims and prosecutors, implicates Equal Protection concerns.

The legislative history with respect to this amendment finds support for the elimination of prisoners' appeals on the grounds that "prisoners file too many

An appeal shall lie from any order, decision, or opinion of any state board, commission, or agency, authorized under the laws of this state to promulgate rules from which an appeal or other judicial review has not otherwise been provided for by law, to the circuit court of the county of which the appellant is a resident or to the circuit court of Ingham county, which court shall have and exercise jurisdiction with respect thereto as in nonjury cases. Such appeals shall be made in accordance with the rules of the supreme court.

frivolous lawsuit" and that such frivolous lawsuits require the expenditure of public funds to respond to such lawsuits. HLSA Report at p. 8. As support for the statement that most prisoner appeals of parole board denials are frivolous, the HLSA cited "the minuscule number of prisoner appeals of parole denials under the corrections code [that] result in reversals of parole denials." HLSA Report at pp. 8–9. The HLSA Report provides the following statistics:

> Over the period from 1995 to 1999, there were a total of 3,879 parole board appeals: 79 appeals by prosecutors and 3,800 appeals by prisoners. In terms of percentages, cumulatively over this period, prosecutor appeals increased by over 400 percent while prisoner appeals increased by about 49 percent.

> Out of the 3,800 parole board appeals filed by prisoners between 1995 and 1999, only 162 cases (or about 4 percent) were remanded by the circuit court to the parole board for reconsideration. Of these 162 remanded cases, only 24 (about .6 percent of the total 3,880 prisoner appeals, or almost 15 percent of the 162 remanded cases) resulted in parole primarily because of the court-ordered reconsideration. Of the remaining 138 prisoner appeals remanded by the courts for consideration by the parole board, there was no change in parole state in 130 of these cases (a little more than .4 percent of the total 3,800 prisoner appeals, or almost 90 percent of the 162 remanded cases), while, under the department's reckoning, 8 prisoners were paroled through the regular parole process. (According to the department, if the reconsideration and parole order happened within four months of the end of the 12 to 24 month continuance, that prisoner was identified as being paroled as a result of the regular parole process. If the prisoner's parole was reconsidered and ordered paroled more than 4 months before the end of the continuance, that prisoner was considered as being paroled as a result of the court-ordered reconsideration of the parole decision.)

HLSA, p. 7.

Based on these statistics, for the great majority of prisoners who appealed a parole denial to state court, the appeal was futile. However, the relative rarity of cases where a state court finds error in the parole board's process or decision does not render those errors any less serious. Moreover, courts and legislatures must refrain from equating causes of action which ultimately do not bring the requested relief with those that are frivolous. *See, e.g., McCarthy v. Mayo,* 827 F.2d 1310, 1318 (9th Cir.1987) ("An appeal is frivolous when the result is obvious and the arguments on appeal wholly lack merit … An appeal that lacks merit is not necessarily frivolous.").

In addition, justifying the elimination of parole appeals by prisoners but not prosecutors or victims by citing the greater number of appeals filed by prisoners and the rarity of relief granted is dubious. If such were the standard for eliminating the right to file claims in state or federal court, habeas relief too should be eliminated, as it is the rare habeas corpus petitioner who is granted relief in federal court. The Court is mindful of the cautionary knell sounded by United States District Judge Sarokin in *Carter v. Rafferty,* 621 F.Supp. 533 (D.N.J. 1985): "[T]he growing volume of … cases should make us even more vigilant; the greater the quantity, the greater the risk to the quality of justice."

Finally, the Court questions the prudence of eliminating review of decisions rendered by the Michigan Parole Board, which enjoys discretionary review of each parole decision. The Superior Court of the State of California for the County of Los Angeles, recently addressed judicial

review of discretionary parole decisions. *In re: Robert Rosenkrantz*, No. A810298 (California Superior Court June 21, 2001). In *Rosenkrantz*, the parole board repeatedly denied parole to Robert Rosenkrantz. Rosenkrantz filed a state habeas corpus petition, claiming that the parole board evaluated his parole eligibility as if he had been convicted of first-degree murder when, in fact, he had been convicted of second-degree murder. California State Superior Court Judge Kathryne Stoltz granted the petition and ordered the parole board to set a parole date commensurate with Petitioner's second-degree murder conviction. Thereafter, the parole board reevaluated Rosenkrantz's eligibility for parole in accordance with the state court's directive and set a new parole date for Rosenkrantz. *Id.* at 5–16.

The Governor of California, exercising his authority under Article V, Section 8(b), of the California Constitution, then reversed the parole board's decision granting Rosenkrantz parole. The California Superior Court, which had retained jurisdiction over the matter, then reviewed the Governor's reversal of the parole board decision pursuant to the state habeas corpus provision. The California Superior Court determined that the Governor's decision to reverse the parole board's decision was not a result of the Governor's individualized consideration of Rosenkrantz's case. It was, the state court concluded, the result of the Governor's well-publicized belief that prisoners convicted of murder, be it first— or second-degree, deserved to serve a term of life imprisonment. The state court, holding that the discretion afforded the Governor to review and reverse state parole board decisions was not absolute and unfettered, cited the dangers of unfettered discretion which impacts the freedom of any citizen:

> A discretion invested in the holder of an office must have been intended to be exercised according to the rules of rea-

son and justice, not according to private opinion; according to law and not humor and within those limits within which an honest man, competent to discharge the duties of his office, ought to confine himself. To do otherwise is to abuse the very discretion reposed in him.

*Id.* at 23.

It would seem to the Court that, at this time, the need for prisoners to have the ability to appeal parole board decisions in state court is greater than ever before. The Michigan Parole Board often applies blanket parole denials, particularly on a prisoner's first parole date. This failure to conduct more careful parole reviews coupled with the possible elimination of review in state court of parole denials for prisoners without the corresponding elimination of appeals by prosecutors or victims from the granting of parole, is, at best, troubling, and, at worst, unconstitutional.

Given that Petitioner has not exhausted his state court remedies and that such remedies may still be available to Petitioner, the Court will dismiss the petition without prejudice. Petitioner may move to reopen this case within sixty days of exhausting his state court remedies pursuant to 28 U.S.C. § 2254, and, for statute of limitations purposes, if the motion to reopen is granted, the original filing date of the present petition shall apply to the reopened case.

## IV. *Conclusion*

For the foregoing reasons, this Court concludes that Petitioner has failed to exhaust his state court remedies with respect to the claims presented herein. Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DISMISSED WITHOUT PREJUDICE.**