RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0239p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

PAUL JACKSON,

> *Petitioner-Appellant,*

*v.*

No. 02-2057

DAVID JAMROG, Warden,

> *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-73310—Paul D. Borman, District Judge.

Argued: October 21, 2003

Decided and Filed: June 2, 2005

Before: KEITH, DAUGHTREY, and GILMAN, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Andrew N. Wise, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellant. Charles C. Schettler, Jr., OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Andrew N. Wise, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellant. Laura Graves Moody, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

_____

**OPINION**

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge. In this appeal from the district court's denial of habeas relief under 28 U.S.C. § 2254, we are asked to determine the constitutionality of a Michigan statute, M.C.L.A. § 791.234(9), which permits an appeal to state court by prosecutors and crime victims from decisions of the state parole board granting parole, but provides no equivalent right of appeal to state prisoners who are denied parole. The petitioner, Paul Jackson, is a Michigan prison inmate who contends that the state legislature's 1999 amendment to § 791.234(9) that produced this dichotomy violates his right to equal protection under the Fourteenth Amendment to the United States Constitution. The district court, utilizing rational-basis analysis, upheld the state statute as constitutional. We agree with this decision and affirm the judgment of the district court.

1

## I.  *FACTUAL AND PROCEDURAL BACKGROUND*

Jackson was convicted of unarmed robbery in Michigan state court in 1989 and was sentenced to a prison term of 4-15 years.  Although he was paroled in 1997, he was eventually arrested again, this time for possession of less than 25 grams of a controlled substance and for resisting  arrest.  As a result, the petitioner's parole was revoked and he was re-incarcerated.  At parole hearings conducted on June 24, 2000, and August 8, 2001, the Michigan Parole Board denied Jackson's requests for release, concluding that "[t]he Parole Board *lacks* reasonable assurance that the prisoner will not become a menace to society or to the public safety."

Alleging that he, unlike state prosecutors and crime victims, could not avail himself of state court remedies to contest even the constitutional validity of the procedures used to deny him parole, Jackson filed with the federal district court a petition for a writ of habeas corpus that raised an equal protection challenge to the Michigan statute governing the parole process.  The court denied that petition on the merits, determining that even though the respondent "has waived exhaustion of state remedies as a defense," the petitioner's "claim does not warrant habeas relief."  Specifically, the district judge ruled that, assuming that prisoners are similarly situated with prosecutors and crime victims, no suspect classifications or fundamental rights are implicated in the parole decision.  Employing the deferential rational-basis review standard in judging the statute, the district court concluded that the state's legitimate explanation – the attempt to minimize the number of frivolous prisoner appeals – rationally accounted for the differing treatment of prisoners on the one hand and prosecutors and crime victims on the other.  From this determination, Jackson now appeals.

## II.  *DISCUSSION*

### A.  *The Statute*

Prior to 1982, Michigan's correctional code contained a general prohibition against appeals from parole board decisions.  Public Act 314 of 1982 amended the relevant statute to permit appeals from the grant or denial of parole.  After prisoners began using this mechanism to appeal denials of parole by the board, the legislature amended the statute to make it clear that appeals from orders granting parole could be undertaken by prosecutors and crime victims.  Hence, until it was once again amended effective March 10, 2000, M.C.L.A. § 791.234(7) (1998) provided, in relevant part:

> [A] prisoner's release on parole is discretionary with the parole board.  The action of the parole board in granting or denying a parole is appealable by the prisoner, the prosecutor of the county from which the prisoner was committed, or the victim of the crime for which the prisoner was convicted.  The appeal shall be to the circuit court in the county from which the prisoner was committed, by leave of the court.

That statute, as amended and renumbered, now provides that "[t]he action of the parole board in *granting a parole* is appealable *by the prosecutor* of the county from which the prisoner was committed *or the victim* of the crime for which the prisoner was convicted."  M.C.L.A. § 791.234(9) (2003 Supp.) (emphasis added).  Consequently, Michigan law no longer authorizes state court review of parole board decisions denying parole, while continuing to provide judicial review of the granting of parole.

### B.  *The Exhaustion Requirement*

We note as a threshold matter that the question now before us has not been addressed by the Michigan state courts, an issue that the district court treated only briefly, finding that the state had waived any objection to the failure to exhaust by failing to raise the issue in a timely fashion.  We find this ruling questionable, at best, given the provision in 28 U.S.C. § 2254(b)(3) that "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance

upon the requirement unless the State, through counsel, expressly waives the requirement." There was no express waiver in this case, and on appeal the state raises the issue, while simultaneously maintaining that the district court should be affirmed on the merits and *not* that the petition should be dismissed for failure to exhaust.

At the time of oral argument, we were concerned, despite the state's ambivalence, with the possibility of having the Michigan courts review the constitutionality of their own state statute before we were called upon to do so. Although the petitioner maintained that there was no avenue of review – given the 1999 amendment to M.C.L.A. § 791.234(9) – at least one district court, in an unrelated case raising the same equal protection issue as the one now before us, held that an inmate unable to appeal the denial of parole under § 791.234(9) might nevertheless appeal under M.C.L.A. § 600.631, the Revised Judicature Act. *See Matson v. Mich. Parole Bd.*, 175 F. Supp.2d 925 (E.D. Mich. 2001). That provision authorizes an appeal of "any order . . . of any state board . . . from which an appeal . . . has not otherwise been provided . . . to the circuit court of the county of which the appellant is a resident . . . ."

Although the plain language of M.C.L.A. § 600.631 would seem to indicate that an appeal by a prisoner of a decision of the parole board should be allowed under the Revised Judicature Act, the Michigan Court of Appeals has held, in the period since this case was argued, that an appeal from the denial of parole is "not allowed under the [Act]." *Morales v. Mich. Parole Bd.*, 676 N.W.2d 221, 225 (Mich. Ct. App. 2003), *app. for leave to appeal denied*, 682 N.W.2d 90 (Table) (Mich. 2004). Given this background, it appears that the petitioner's failure to exhaust prior to filing the current habeas action is excusable under § 2254(b)(1)(B)(i), because "there is an absence of available State corrective process."

## C. *The Equal Protection Claim*

As we have noted, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution "protects against arbitrary classifications, and requires that similarly situated persons be treated equally." *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002). Nevertheless, "[t]o withstand Fourteenth Amendment scrutiny, statutes that do not interfere with fundamental rights or single out suspect classifications must bear only a rational relationship to a legitimate state interest." *Id.* (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

The respondents here contend that the equal protection clause is not implicated in this matter because prisoners seeking parole are not "similarly situated" with prosecutors and crime victims seeking to restrict releases from imprisonment. It is, of course, axiomatic that parties on opposite sites of any true dispute will not be similarly situated, because one litigant, after all, is attempting to achieve a result that is the opposite of the goal sought by the opponent. The district judge recognized the inherent fallacy in the state's argument and simply presumed that the parties in this litigation met the "similarly situated" prerequisite for equal protection analysis. On appeal, we assume likewise. The challenged statute merely seeks to define the appellate options available to parties aggrieved by decisions of the parole board. Because prisoners, as well as prosecutors and crime victims, can be aggrieved by such determinations, all three groups are "similarly situated."

The district court then determined that the rational-basis standard of review was appropriate in this case because the challenged statute "does not violate a fundamental right or make a suspect distinction." Without question, prisoners are not considered a suspect class for purposes of equal protection litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998). Moreover, there is no fundamental right to parole under the federal constitution. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). As the district court correctly noted, prison inmates do have a fundamental

right of access to the courts, *see Bounds v. Smith*, 430 U.S. 817, 828 (1977), but the right is not an absolute one:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).  The district court was equally correct in determining that "judicial review of the denial of parole is not an attack on the prisoner's conviction or sentence; nor is it a challenge to the conditions of confinement."  Moreover, as the Michigan Court of Appeals noted in *Morales*, an inmate who is denied parole may, under certain circumstances, test the ruling of the parole board by means of "a complaint for habeas corpus" ("where [for example]  the Parole Board has denied a prisoner parole exclusively on the basis of his race, religion, or national origin") or by means of "an action for mandamus" ("to compel compliance with a statutory duty").  *Morales*, 676 N.W.2d at 229-30.  Thus, concluded the *Morales* court, a Michigan prisoner denied parole is not "without recourse to have the judiciary review the legality of [the] inmate's imprisonment." *Id.* at 230.

Without a basis for application of strict scrutiny, the district court proceeded to review M.C.L.A. § 791.234(9) to determine whether it could be upheld as having a rational basis for the distinction in its treatment of prosecutors on the one hand and inmates on the other.  The state argued that the statute was justified on the basis of a perceived need to decrease frivolous inmate appeals from parole decisions, which had risen in number dramatically since the original statute was enacted in 1982.  The state also contended that the financial burden on the state courts had undergone a similar increase and that the legislature's protection of the state fisc was an additional justification for the decision to amend the provision to eliminate prisoner appeals.

The district court accepted the first of these two arguments, noting that the deterrence of frivolous prisoner lawsuits has been recognized as a legitimate legislative goal and citing in support of this proposition *Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997), and *Lewis v. Sullivan*, 279 F.3d 526, 528, 531 (7th Cir. 2002).  The court also relied upon statistics provided in the legislative document referred to as the House Report to the 1999 amendment.  Those figures indicated that the vast majority of appeals from the denial of parole were fruitless, while prosecutorial appeals had been successful some 25 percent of the time:

> [F]rom 1995 to 1999, there were a total of 3,879 parole board appeals: 79 appeals by prosecutors and 3,800 by prisoners . . . .  Out of the 3,800 . . . , only 162 cases (or about 4 percent) were remanded by the circuit courts to the parole board for reconsideration.  Of these 162 remanded cases, only 24 (about .6 percent of the total . . .) resulted in parole primarily because of the court-ordered reconsideration.
>
> * * * * * *
>
> Figures provided by the Department of Corrections indicate that from 1996 through 1999, prosecutor appeals of parole grants have been successful almost 26 percent of the time.

*See* House Legislative Analysis Section, First Analysis, H.B. 4624 at 9 (Mich. Mar. 21, 2000). Reviewing these statistics, the district court concluded that "[d]ifferentiating between prisoners and non-prisoners has a rational basis because prisoner claims have inundated the judicial system in a

manner that non-prisoners have not"  and held that "[t]he amendment to § 791.234(9) is rationally related to the legitimate state goal of eliminating frivolous lawsuits filed by prisoners."

We agree, even though we recognize, as did the district court, that the legislature's answer to the problem of groundless prisoner lawsuits sweeps away the meritorious along with the frivolous. But, as the district court also noted, "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends.  A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Heller v. Doe*, 509 U.S. 312, 321 (1993) (internal quotation marks and citations omitted).

Were we to hold otherwise and strike down § 791.234(9) as a violation of the Equal Protection Clause, it is exceedingly unlikely that the Michigan legislature would respond by resurrecting the statute as it existed before the 1999 amendment.  Hence, the relief the petitioner seeks here would not be available even if we were to rule in his favor, for we are without authority to add anything to the state provision, lest we be accused of legislating.  Even if we were to invalidate only the 1999 amendment, it is exceedingly likely that the Michigan legislature, in order to stem the tide of prisoner appeals, would repeal § 791.234(9) altogether.  The result would be that no one could appeal from a decision of the parole board.  That result might produce literal equality as between prisoners and non-prisoners, but it would defeat the interest of the legislature in its "duty to protect the public health, safety, and welfare . . . by ensuring that prosecutors and crime victims could continue to be able to challenge the parole board's decision to release a prisoner to parole if the prosecutor or victim believed that the prisoner should not be released."  House Report at 15.

### III. *CONCLUSION*

As the Michigan Court of Appeals has noted, even in the absence of the right to appeal under § 791.234(9), state inmates wrongfully denied parole on a basis recognized as illegal continue to have access to the courts to seek relief through state habeas actions and mandamus. *See Morales*, 676 N.W.2d at 229-30.  The 1999 amendment to § 791.234(9) deprives a prisoner only of the privilege of challenging the *discretionary* determination by the board not to grant immediate release on parole.  Because the legislature's action in adopting the amendment has a rational basis, as discussed above, we AFFIRM the judgment of the district court denying the petitioner habeas relief.