RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LINDEN BOWMAN,

               *Plaintiff-Appellant,*

       *v.*

UNITED STATES OF AMERICA; DONALD
RUMSFELD,

            *Defendants-Appellees.*

No. 07-4322

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 06-01323—Solomon Oliver, Jr., District Judge.

Argued: October 24, 2008

Decided and Filed: December 18, 2008[*]

Before: GIBBONS and COOK, Circuit Judges; STEEH, District Judge.[**]

_____

## COUNSEL

**ARGUED:** Robert T. Lynch, LYNCH LEGAL SERVICES, Cleveland, Ohio, for Appellant. Lowell V. Sturgill, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. Alexander Joseph Luchenitser, AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE, Washington, D.C., for Amici Curiae. **ON BRIEF:** Robert T. Lynch, LYNCH LEGAL SERVICES, Cleveland, Ohio, for Appellant. Lowell V. Sturgill, Jr., Robert M. Loeb, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. Alexander Joseph Luchenitser, AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE, Washington, D.C., Richard L. Rosen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Steven W. Fitschen, NATIONAL LEGAL FOUNDATION, Virginia Beach, Virginia, for Amici Curiae.

_____

[*] This decision was originally issued as an "unpublished decision" filed on December 18, 2008. On April 21, 2009, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

————————————

**OPINION**

————————————

GEORGE CARAM STEEH, District Judge.  This lawsuit arises from plaintiff Linden Bowman's early retirement from the United States Air Force and his failed attempt to participate in a program that would allow him to have community service work count toward his years of service needed to obtain a full twenty-year military retirement.  The Secretary of Defense failed to process his request for military service credit for his work as a youth minister on grounds that the regulations specifically prohibit credit for employment with "religious organizations engaged in religious activities, unless such activities are unrelated to religious instruction, worship services, or any form of proselytization."  Bowman claims the regulation violates the express language of the enabling legislation and is unconstitutional on its face and as applied to him in violation of his Fifth Amendment Equal Protection rights.  The district court dismissed his complaint for failure to state a claim.  Bowman now appeals that dismissal.[1]  Because we find the regulation is consistent with the enabling statute and does not violate Bowman's equal protection rights, we AFFIRM.

## *BACKGROUND*

Bowman served in the United States Air Force from September, 1977 until January, 1996, when he took an early retirement as part of a reduction in force.  Bowman received a final rank of Technical Sergeant.  Because Bowman was just a few years shy of the twenty-years required for a full retirement, he was eligible to participate in a program ("Program") allowing him to perform community service that would be counted toward his years of military service for retirement.  The Program was provided by the National Defense Authorization Act for Fiscal Year 1993 which directed the Secretary of Defense to "implement a program to encourage members and former members of the

---

[1]Two amicus briefs have been filed.  Americans United for Separation of Church and State (AUSCS) has filed an amicus brief in support of the government.  The National Legal Foundation (NLF) has filed an amicus brief in support of Bowman.

armed forces to enter into public and community service jobs after discharge or release from active duty." *See* Pub. L. No. 102-484, § 4462(a)(1), 106 Stat. 2702, 2741 (1992), *codified at* 10 U.S.C. § 1143a ("Statute"). Section 1143a is entitled "Encouragement of postseparation public and community service."[2] The Statute defines "public service organizations" as organizations providing school services and education administration, law enforcement, public health care, social services and "[a]ny other public or community service." 10 U.S.C § 1143a(g).

The Secretary of Defense promulgated regulations for the Community Service Program. 32 C.F.R. §§ 77.1-77.6. The Program authorized service members who retired from active duty with at least 15 but fewer than 20 years of service to accrue additional retirement credit for work in a qualified public or community service organization. 32 C.F.R. § 77.3(c). The regulations permit qualified former military personnel to accrue additional service credit for retirement through employment with "public or community service organization[s] that provide the services listed in sections 77.3(d)(1) through (d)(12)." 32 C.F.R. § 77.4(b)(2). Section 77.3(d) paints with a very broad brush the types of public and community service organizations for which retirement credit is allowed:

> (d) Public and community service organization. Government or private organizations that provide or coordinate the provision of the following services[:]
> (1) Elementary, secondary, or post secondary school teaching or administration.
> (2) Support of teachers or school administrators.
> (3) Law enforcement.
> (4) Public health care.
> (5) Social services.
> (6) Public safety.
> (7) Emergency relief.
> (8) Public housing.
> (9) Conservation.
> (10) Environment.

---

[2]Section 1143a is a section of the Defense Conversion, Reinvestment, and Transition Assistance Act of 1992 (the "Act"), which was Division D of the National Defense Authorization Act for Fiscal Year 1993. Pub. L. 102-484.

(11) Job training.
(12) Other public and community service not listed previously, but consistent with or related to services described in paragraphs (d)(1) through (11) of this section.

32 C.F.R. § 77.3(d)(1)-(12). The regulations bar credit toward retirement for employment with "organizations engaged in religious activities, unless such activities are unrelated to religious instructions, worship services, or any form of proselytization." 32 C.F.R. § 77.3(a). The regulations also exclude "businesses organized for profit, labor unions, [and] partisan political organizations." *Id*.

At the time of his retirement, Bowman had 17 years and three months of service in the Air Force. After retiring from the Air Force, Bowman began employment with the People's Church of C & MA ("Church") in Geneva, Ohio, first as a lay intern, and later as a youth minister. He does not dispute that his duties included religious instructions, worship services, or proselytization. The complaint does not elaborate on what his duties were either as a lay intern or as a youth minister. Bowman was employed with the Church continuously from his retirement until February, 2001. Bowman contends that this employment should be counted toward his years of service so that he is entitled to a full retirement. According to his complaint, if he were granted the retirement credit for his work as a youth minister, he would be entitled to receive 50 percent of his base military pay upon reaching the age of 62, as opposed to receiving only 42 percent of his base military pay. The complaint does not quantify the money difference.

Bowman alleges that he filed for military service credit under the Program "late in the year 1998," again in November, 2002, and again in October, 2004, this time with the assistance of counsel, by submitting a Validation of Public or Community Service Employment Form to the Defense Manpower Data Center. Neither plaintiff nor his counsel has ever received a response. Plaintiff alleges that his request for creditable service has not been granted or even processed because the form shows that his employment was with a religious organization. Bowman alleges that the exclusion of employment with organizations engaged in religious activities from qualification for

creditable early retirement under the Program conflicts with the broadly drafted enabling legislation, 10 U.S.C. § 1143a, and is unconstitutional on its face and as applied to him in violation of his Fifth Amendment Equal Protection rights.

### *ANALYSIS*

**A.      *Standard of Review***

Whether or not a district court properly dismissed a complaint for failure to state a claim under Rule 12(b)(6) is subject to *de novo* review.  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).  Under the Supreme Court's recent articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 127 S. Ct. at 1964-65).

An agency must interpret its implementing legislation in a reasonable manner and may not "promulgate regulations in a manner that are arbitrary or capricious in substance, or manifestly contrary to the statute."  *Clark Reg'l Med. Ctr. v. United States Dep't of Health & Human Res.*, 314 F.3d 241, 244-45 (6th Cir. 2002).  Where Congress empowers an agency to enact rules and regulations necessary to carry out an Act, those regulations are to be upheld "so long as [they are] 'reasonably related to the purposes of the enabling legislation.'"  *Jackson v. Richards Med. Co.*, 961 F.2d 575, 585 (6th Cir. 1992) (quoting *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 369 (1973)).

**B.**     *The regulation comports with the statute and Congressional intent*

Bowman argues that the regulatory exclusion in 32 C.F.R. § 77.3(a) is not authorized by the enabling legislation, 10 U.S.C. § 1143a, and is contrary to the purpose and intent of Congress in establishing the Program. The government, on the other hand, argues that the regulatory exclusion is authorized by § 1143a, is supported by the legislative history, and is entitled to substantial deference under *Chevron U.S.A., Inc. v. Nat'l Res. Def. Council Inc.*, 467 U.S. 837, 844 (1984). For the reasons discussed below, the district court properly held that the regulatory exclusion contained in 32 C.F.R. § 77.3(a) is consistent with the authorization provision of 10 U.S.C. § 1143a.

In deciding whether the regulatory exclusion conflicts with the statutory enactment, 10 U.S.C. § 1143a(g), the proper starting point is the enabling legislation itself. 10 US.C. § 1143a(a) provides:

> **1143a. Encouragement of postseparation public and community service**
>
> **(a) In general.** The Secretary of Defense shall implement a program to encourage members and former members of the armed forces to enter into public and community service jobs after discharge or release from active duty.

*Id*. This enabling legislation gives the Secretary broad power to implement the Program. Congress defined community service organizations as set forth below:

> (g) **Definitions.** – In this section, the term "public service and community service organization" includes the following organizations:
> (1) Any organization that provides the following services:
> (A) Elementary, secondary, or postsecondary school teaching or administration.
> (B) Support of such teaching or school administration.
> (C) Law enforcement.
> (D) Public health care.
> (E) Social services.
> (F) Any other public or community service.
> (2) Any nonprofit organization that coordinates the provision of services described in paragraph (1).

The statute is silent on the issue of whether or not work for a religious organization is exempt. The Secretary's challenged regulation, 32 C.F.R. § 77.3(a), allows early retirees

to participate in the Program when they work for nonprofit organizations engaged in religious activities "if the activities are unrelated to religious instructions, worship services, or any form of proselytization."

Bowman contends that Congress would have spoken on the issue if it had intended to exclude certain work in religious activities as it has done so explicitly in other legislation. For example, Bowman cites to three statutes that the district court relied upon in its analysis that the regulatory exclusion was needed to avoid a violation of the Establishment Clause of the First Amendment. *Bowman v. United States*, 512 F. Supp. 2d 1056, 1069 (N.D. Ohio 2007). In each of those Acts, Congress specifically prohibited government funds from being used for sectarian purposes. *See* 42 U.S.C. § 300X-65(i) ("No funds provided through a grant or contract to a religious organization to provide services under any substance abuse program under this subchapter or subchapter III-A of this chapter shall be expended for sectarian worship, instruction, or proselytization"); 29 U.S.C. § 2938 (a)(3) ("Participants shall not be employed under this chapter to carry out the construction, operation, or maintenance of any part of any facility that is used or to be used for sectarian instruction or as a place for religious worship"); and 42 U.S.C. § 9920(c) ("No funds provided directly to a religious organization to provide assistance under any program described in subsection (a) of this section shall be expended for sectarian worship, instruction, or proselytization"). Bowman argues that because Congress has explicitly forbidden using public funds to support a religious organization for sectarian worship, instruction, or proselytization in other instances, the fact that it did not do so under § 1143a must be construed to mean that Congress did not intend for any restriction to apply. Bowman makes too much of Congressional silence.

Congress endowed the Secretary with broad discretion to adopt eligibility criteria for participation. The government contends that drawing an inference from Congressional silence is inappropriate because the Secretary's regulations reasonably construe statutory terms left undefined by Congress in a manner supported by the legislative history. The government argues that an inference may not be drawn from

Congressional silence where the inference "is contrary to all other textual and contextual evidence of congressional intent." *Burns v. United States*, 501 U.S. 129, 136 (1991). The government contends that since the enabling statute specifically allows the Secretary to define the activities which qualify for a retirement credit, the Secretary is entitled to substantial deference for those regulations. In *Chevron*, the Court held that where Congress has explicitly given an agency the power to elucidate a specific provision of a statute by regulation, the regulation must be upheld unless it is "arbitrary, capricious, or manifestly contrary to the statute." 467 U.S. at 844.

The first question for the Court in deciding whether or not the Secretary's interpretation of § 1143a as set forth in 36 C.F.R. § 77.3(a) is permissible is "'whether Congress has directly spoken to the precise question at issue' by employing precise, unambiguous statutory language." *Alliance for Cmty. Media v. F.C.C.*, 529 F.3d 763, 776-77 (6th Cir. 2008) (quoting *Chevron*, 467 U.S. at 842). Where Congress has spoken in unambiguous terms, the inquiry ends and the court must "give effect to the unambiguously expressed intent of Congress." *Jewish Hosp., Inc. v. Sec'y of Health & Human Serv's*, 19 F.3d 270, 273 (6th Cir. 1994). Congress's definition of "public and community service organization" is vague and leaves a gap for the Secretary to fill. This is especially true given the myriad of organizations, public and private, offering various services of value to the community.

Since § 1143a(g) is ambiguous, the second prong of the *Chevron* analysis comes into play, and the Court must determine if the Secretary's interpretation of the statute is reasonable. *Alliance for Cmty. Media*, 529 F.3d at 778. The Court is guided by the specific language of the provision at issue and its legislative history. *Id*. The second *Chevron* prong requires the court to decide if the regulation represents a "permissible construction of the statute," and substantial deference is given to the agency's interpretation. *Estate of Gerson v. Comm'r of Internal Revenue*, 507 F.3d 435, 438 (6th Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 2502 (2008) (quoting *Chevron*, 467 U.S. at 842-43); *Harris v. Olszewski*, 442 F.3d 456, 466 (6th Cir. 2006).

The government argues that the exemption is compelled by Congressional intent to benefit only a very narrow class of community service organizations, namely, those involved in education, law enforcement, and health care. The district court based its decision on this distinction. The government relies on the Senate Report which specifically provides that the purpose of the legislation is to "authorize active duty personnel who are approved for early retirement to accrue additional military retirement credit if they take critical jobs, such as in education, law enforcement, and health care." Senate Committee on Armed Services, National Defense Authorization Act for Fiscal Year 1993, S. Rep. No. 102-352, at 202 (1992). The government contends that the emphasis on "critical job vacancies" in "education, law enforcement, and health care," is in harmony with the Secretary's exclusion of work for a religious organization if it involves "religious instructions, worship services, or any form of proselytization."

Bowman, however, asserts that the exclusion is at odds with the expansive language of § 1143a(g) which includes credit for organizations involved in "social services" and "any other public or community service." Nothing in the legislative history suggests that Congress intended to encourage retirees to accept positions which would involve "religious instructions, worship or proselytization." Similarly, nothing in the text of the statute itself suggests that Congress intended to benefit this kind of activity. Under these circumstances, deference is owed to the Secretary of Defense who, through his regulations, has excluded from § 1143a(g)'s definition of service all activities involving "religious instructions, worship or proselytization." Accordingly, the district court properly held that the regulatory exclusion contained in 32 C.F.R. § 77.3(a) does not violate 10 U.S.C. § 1143a(g).[3]

---

[3] Bowman argues, by way of a footnote, that his allegation that his work as a youth minister constituted "public and community service" within the meaning of 10 U.S.C. § 1143a(g) must be taken as true for purposes of a Rule 12(b)(6) motion. Bowman is incorrect. His allegation is not a factual assertion but a legal conclusion which we need not accept. *See e.g., Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

**C.     *The regulation does not violate Bowman's right to equal protection***

The district court also dismissed Bowman's complaint on the grounds that 32 C.F.R. § 77.3(a) did not violate his equal protection claim both on its face and as applied to him.  Since Bowman did not set forth any facts challenging the application of the statute to him, the district court properly found that his as-applied and facial claims were one and the same and analyzed them as such.   The district court correctly recognized that equal protection applies to the federal government through the Due Process Clause of the Fifth Amendment.  *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954). The Equal Protection Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally."  *Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir. 2005) (quotations omitted).

1.     *Strict Scrutiny*

Bowman argues that his challenge of the constitutionality of the exclusion is subject to strict scrutiny because the exclusion is a classification based on religion and burdens his free exercise of religion.  To survive strict scrutiny analysis, the regulation must be narrowly tailored to advance a compelling governmental interest.  An equal protection claim is subject to rational basis review unless it involves infringement of a fundamental right or application to a suspect class.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).  Unless the Program violates Bowman's fundamental right to exercise his religion, it must be upheld as long as it bears a "rational relationship to a legitimate state interest."  *Jamrog*, 411 F.3d at 618.  Strict scrutiny applies where the classification affecting eligibility for benefits is based on religion or burdens the exercise of religion.  *See McDaniel v. Paty*, 435 U.S. 618, 628 (1978).  The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. CONST. amend. I.  Laws intended to advance or inhibit religion, or having either effect, generally violate the Establishment Clause.  *Agostini v. Felton*, 521 U.S. 203, 222-23 (1997).

On appeal, Bowman relies primarily on two Supreme Court cases in support of his argument that strict scrutiny analysis applies to his equal protection claim.  First, he

relies on *McDaniel*, in which the Supreme Court struck down a law prohibiting ministers from participating as delegates or representatives in state constitutional conventions. The Court applied strict scrutiny analysis because the law prohibiting ministers from serving as delegates and legislators at state constitutional conventions pitted plaintiff's constitutional right to the free exercise of his religion against his constitutional right to seek and hold public office. *See Id.* at 626. The district judge ruled that *McDaniel* did not apply because the regulation in dispute does not involve Bowman's right to participate in the political affairs of the community. 512 F. Supp. 2d at 1066. In fact, the Supreme Court's recent decision in *Locke v. Davey*, 540 U.S. 712, 720 (2004), supports this interpretation. In *Locke*, the Court upheld the State of Washington's constitutional prohibition against using a state scholarship toward a degree in devotional theology and distinguished *McDaniel* on the basis that the prohibition at stake was much less onerous than denial of a minister's right to participate in the political affairs of the community. *Id.* at 720, 725.

Bowman also relies on *Sherbert v. Verner*, 374 U.S. 398 (1963) to support his argument that strict scrutiny analysis applies to his constitutional challenge to 32 C.F.R. § 77.3(a). In *Sherbert*, the Court held that the denial of unemployment benefits to a person because her religious beliefs prevented her from working on Saturday constituted a burden on the exercise of religion that must be supported by a compelling state interest. *Id.* at 403-06. Since *Sherbert* was decided, the Supreme Court has held that the government cannot deny a public benefit based on a worker's religious beliefs in a number of employment cases. *See Hobbie v. Unemployment Appeals Comm'n of Florida*, 480 U.S. 136 (1987) (strict scrutiny test applied to Florida's refusal to award unemployment compensation to claimant who was discharged for refusing to work on her Sabbath); *Thomas v. Review Bd. of Indiana Employment Sec. Div.,* 450 U.S. 707 (1981) (strict scrutiny test applied to Indiana's refusal to pay unemployment compensation to Jehovah Witness who quit his job after his employer required him to make armaments).

The facts of this case are markedly distinct from the situation presented in *Sherbert* and its progeny. Here, Bowman need not choose between exercising his religious beliefs and receiving a governmental benefit. He worked as a youth minister for pay and any loss of an incremental increase in his retirement pay burdened him much less than losing unemployment compensation altogether.

In *Locke*, the Supreme Court addressed the question of whether Washington's constitution, which prohibits public funding for any religious worship, exercise or instruction, as applied to bar state scholarships for degrees in devotional theology, violated the Free Exercise Clause. *Id*. at 719. In addressing this question, the Supreme Court noted that if the State of Washington chose to allow private recipients to use their state scholarship to pursue a degree in devotional theology, there would be no violation of the Federal Constitution. *Id*. at 719. The Ninth Circuit had ruled that the exclusion of scholarships for devotional theology degrees was subject to strict scrutiny because the state had singled out religion for unfavorable treatment. *Id*. at 718. Under strict scrutiny analysis, the Ninth Circuit ruled that the exclusion must be "narrowly tailored to achieve a compelling state interest." *Id*. The Ninth Circuit determined that the state's interest in avoiding a violation of the Establishment Clause was not compelling and held that the scholarship program was unconstitutional. *Id*.

The Supreme Court reversed, finding that prohibiting the funding of devotional degrees did not evince any religious animus toward religion. *Id*. at 725. The rationale for this conclusion is that the exclusion did not prohibit students from attending religious schools or even from taking devotional theology courses, but only barred students from pursuing a vocation in the clergy. *Id*. at 721. The Supreme Court found that excluding state funding of training for a religious profession is in keeping with the state's antiestablishment interests. *Id*. at 723-25. In reaching this conclusion, the Court reviewed several of its prior decisions in which it found laws in violation of the Free Exercise Clause and distinguished them. *Id*. at 725 (citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (criminalizing religious ritual of animal sacrifice violates Free Exercise clause); *McDaniel*, *supra* (law denying ministers the

right to participate in political affairs of the community unconstitutional).  The *Locke* Court further ruled that the exclusion did not require students to choose between exercising their religious beliefs and receiving a government benefit, as the students were free to pursue a secular degree while obtaining a religious degree.  *Id.* at 720-21 (distinguishing *Hobbie*, *supra*; *Thomas*, *supra*; and *Sherbert*, *supra*).

The Supreme Court ruled that the "State has merely chosen not to fund a distinct category of instruction" and found that decision permissible.  *Id.* at 721.  Although the Washington Constitution drew "a more stringent line than that drawn by the United States Constitution," *id.* at 722, the Court still found the State of Washington's interest in avoiding the establishment of religion and its concomitant interest in avoiding funding for devotional degrees, to be "historic and substantial."  *Id.* at 725.  In *Locke*, the Supreme Court found that Washington's "historic and substantial" interest in avoiding an establishment of religion allowed it to choose not to fund training for religious professions, even where such funding would *not* violate the Establishment Clause.  *Id.* at 725.

As in *Locke*, Bowman has not shown that his fundamental right to the free exercise of his religion has been violated.  He was free to work as a youth minister but could not have that work count toward his military retirement.  The regulation at issue here, 32 C.F.R. § 77.3(a), not only excludes work for religious organizations that "are unrelated to religious instructions, worship services, or any form of proselytization," but also excludes all work for "businesses organized for profit, labor unions, and partisan political organizations."  The breadth of the exclusion suggests that the Secretary was not discriminating along religious lines.

As AUSCS points out in its amicus brief, this case is most analogous to the Supreme Court's opinion in *Johnson v. Robison*, 415 U.S. 361 (1974).  In *Johnson*, a religiously-motivated conscientious objector to the Vietnam War sought but was denied educational benefits for veterans.  *Id.* at 362-64.  By statute, the government provided educational funding to veterans who had served on "active duty" in Vietnam.  *Id.* at 363.  The conscientious objector was able to avoid the draft pursuant to a regulation which

allowed him to perform "alternative civilian service." *Id*. at 366, n.1. He completed two years of alternative civilian service work at a hospital. *Id*. at 364. He then brought suit alleging that his hospital service work should be counted as "active duty" toward the educational benefits and that its exclusion violated his First Amendment right to the free exercise of his religion and violated his right to equal protection under the Fifth Amendment. *Id*. at 365.

The Supreme Court addressed the question of whether the law limiting the class of persons entitled to veterans' educational benefits to those individuals who actually served in the Armed Forces, and not to those who performed "alternative civilian service" as conscientious objectors, violated the appellee's equal protection rights. *Id*. at 374. The Court applied the rational-basis test, over appellee's argument that strict scrutiny should apply, and ruled that Congress had a legitimate interest in treating those men and women who served their country through active duty in the military differently from those who served in civilian life as alternative service performers. *Id*. at 374 n.13, 381-82. The Court identified Congress's legitimate public interest in attracting men and women to serve in the military, to provide them with incentives to give up educational and employment opportunities to do so, and to assist them in their return to civilian life, as a sufficient reason to satisfy the rational-basis test. *Id*. at 376-82.

The conscientious objector argued that denying his claim to veterans' educational benefits amounted to a violation of his right to exercise his religion freely because it increased the price he must pay to adhere to his religious beliefs. *Id*. at 383. The Court disagreed, finding that the "withholding of educational benefits involves only an incidental burden upon appellee's free exercise of religion - if, indeed, any burden exists at all." *Id*. at 385. The Court then looked at Congressional intent, which was aimed at rewarding those who served in active duty and assisting them in returning to civilian life, not to any legislative purpose to interfere with the free exercise of religion. *Id*.

Similarly, in this case, the Secretary's exclusion of different types of work from the definition of "community service" was not intended to interfere with the free exercise of religion. The withholding of a retirement credit for Bowman's work as a youth

minister does not burden his right to practice or adhere to his religious beliefs.  The district court properly held that strict scrutiny did not apply because the regulation did not interfere with Bowman's fundamental right to exercise his religion and was not motivated by animosity against religion.

2.    *Rational Basis Scrutiny*

Having found that 32 C.F.R. § 77.3(a) does not interfere with Bowman's right to freely exercise his religious beliefs and that he is not a member of a suspect class, the rational basis test applies to the question of whether the exclusion may be upheld. *Jamrog*, 411 F.3d at 618 (citing *Cleburne Living Ctr.*, 473 U.S. at 500).  Rational basis review is extremely deferential.  "[A] statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).  Under the rational-basis test, the question is whether the regulation at issue is "rationally related to legitimate government interests." *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007) (quoting *Washington v. Glucksberg*, 521 U.S. 720, 728 (1997)).  "[C]ourts hold statutes unconstitutional under this standard of review only in rare or exceptional circumstances." *Id*.  Although the standard is quite liberal, a classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Johnson*, 415 U.S. at 374-75 (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920), and citing *Reed v. Reed*, 404 U.S. 71, 75-76 (1971)).  For the reasons set out below, the regulation withstands the deferential rational-basis test.

The government argued before the district court that the regulation in dispute, 10 C.F.R. § 77.3(a), met the rational basis test for two reasons.  First, the government argued that the regulation comports with the alleged sole purpose of the statute, 10 U.S.C. § 1143a(g), to fill critical needs in public service organizations limited to those involving law enforcement, education, and public health.  Secondly, the

government argued that the regulation was rationally related to the government's interest in avoiding an Establishment Clause violation. The district court held that the exemption of 32 C.F.R. § 77.3(a) withstood rational basis scrutiny under both arguments. The government has now abandoned the Establishment Clause violation argument; thus, this court need not address it.

The district court did not err in holding that the regulatory exclusion was necessary to comport with Congressional intent to limit community service credit to those serving in education, law enforcement, and public health. The government posits that the regulations easily pass scrutiny under the rational-basis test since they limit the class of activities that can support a group of a PACs retirement credit to the group Congress identified. Nothing in the statute itself or the legislative history suggests that a retirement credit should be given for a retiree whose work for a religious organization involves religious instructions, worship or proselytization. As the district court properly found, the regulation is rationally related to limiting the retirement credit to jobs which fill "critical needs" in the community, such as in education, law enforcement, and health care.

## *CONCLUSION*

The regulation, 32 C.F.R. § 77.3(a), conforms with the definition of "community service" set forth in the statute, 10 U.S.C. § 1143a(g), and with Congressional intent. Accordingly, the district court's dismissal of plaintiff's complaint is **AFFIRMED**.

The regulation easily survives rational basis review. It is not arbitrary and capricious in its exclusion of certain religious activities. The exemption serves the legitimate governmental interest of avoiding the mere appearance of excessive governmental entanglement with religion. Thus, the district court's ruling that the regulation does not violate Bowman's equal protection rights hereby is **AFFIRMED**.