[Cite as *Smith v. Dept. of Transp.*, 2015-Ohio-5240.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


Craig D. Smith,                                    :

      Plaintiff-Appellant,              :
                                                                      No. 15AP-521
v.                                                  :         (Ct. of Cl. No. 2014-00702)

Ohio Department of Transportation,   :              (ACCELERATED CALENDAR)

      Defendant-Appellee.              :


D E C I S I O N

Rendered on December 15, 2015


*Thomas A. Sobecki*, for appellant.

*Michael DeWine*, Attorney General, *Christopher L. Bagi*, and *Christopher P. Conomy*, for appellee.


APPEAL from the Court of Claims of Ohio

SADLER, J.

{¶ 1} Plaintiff-appellant, Craig D. Smith, appeals from a judgment of the Court of Claims of Ohio granting a judgment on the pleadings in favor of defendant-appellee, Ohio Department of Transportation ("ODOT"). For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant is the owner of a business known as the Tea House of the Dancing Lady ("Tea House"), located at 22115 Tiffin Avenue, Sandusky, Ohio. Appellant has operated the business at this location since 1975. According to the complaint, prior to September 2013, Tiffin Avenue merged with State Route 101 as the two roadways ran past

the Tea House.  In September 2013, ODOT constructed a State Route 101 overpass.  As a result of the construction, State Route 101 no longer abuts the Tea House.

{¶ 3}  Appellant brought suit against ODOT in the Court of Claims seeking damages for the diminution in the value of his real property.  According to the complaint, the Tea House has suffered a substantial loss of revenue due to the decreased traffic flow on Tiffin Avenue caused by the relocation of State Route 101 and the closing of Tiffin Avenue south of the Tea House at the railroad tracks.  Appellant alleged that the ODOT construction project has resulted in a taking of his property without just compensation.

{¶ 4}  On March 2, 2015, ODOT filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C).  On April 24, 2015, the Court of Claims granted ODOT's motion and dismissed appellant's complaint.  Appellant filed a timely notice of appeal to this court on May 19, 2015.

## II. ASSIGNMENT OF ERROR

{¶ 5}  Appellant asserts a single assignment of error as follows:

> The Court of Claims Erred in Holding That Smith Had Not Suffered a Substantial, Material or Unreasonable Interference with the Public's Access to His Property.

## III. STANDARD OF REVIEW

{¶ 6}  Civ.R. 12(C) states: "After the pleadings are closed but within such times as not to delay the trial, any party may move for judgment on the pleadings."  "In ruling on a motion for judgment on the pleadings, the court is permitted to consider both the complaint and answer."  *Peters v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-1048, 2015-Ohio-2668, citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996).  When presented with such a motion, a trial court must construe all the material allegations of the complaint as true and must draw all reasonable inferences in favor of the nonmoving party.  *Id.*, citing *Pontious* at 570, citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165 (1973); *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581 (2001).  The court will grant the motion if it finds, beyond doubt, that the plaintiff can prove no set of facts in support of the claim(s) that would entitle him or her to relief.  *Peters*, citing *Pontious* at 570.  A judgment on the pleadings dismissing an action is subject to a de novo standard of review in the court of appeals.  *Id.*, citing

*RotoSolutions, Inc. v. Crane Plastics Siding, L.L.C.*, 10th Dist. No. 13AP-1, 2013-Ohio-4343, ¶ 13, citing *Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048, ¶ 5 (10th Dist.).

## IV.  LEGAL ANALYSIS

{¶ 7}   In his sole assignment of error, appellant argues that the trial court erred when it granted judgment on the pleadings in favor of ODOT.  We disagree.

{¶ 8}   "When a landowner's property abuts a public highway, that owner 'possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also a private right or easement for the purpose of ingress and egress to and from his property, which *latter right* may not be taken away or destroyed or substantially impaired without compensation therefor.' "  (Emphasis added.) *State ex rel. BDFM Co. v. Ohio Dept. of Transp.*, 10th Dist. No. 11AP-1094, 2013-Ohio-107, ¶ 15, quoting *State ex rel. Merritt v. Linzel*, 163 Ohio St. 97 (1955), paragraph one of the syllabus.  "However, an abutting property owner's right of access is generally subordinate to the public's right to use or improve a public street." *Salvation Army v. Ohio Dept. of Transp.*, 10th Dist. No. 04AP-1162, 2005-Ohio-2640, ¶ 16, citing *State ex rel. Schiederer v. Preston*, 170 Ohio St. 542, 544 (1960).  "Further, proof that property has been damaged, or rendered less desirable as a result of governmental activity, does not in itself constitute a taking so as to entitle a property owner to compensation."  *Id.*, citing *State ex rel. Morris v. Chillicothe*, 4th Dist. No. 1720 (Oct. 2, 1991).  " 'The test of whether this right of access is so impaired as to require compensation is whether there is a substantial, material or unreasonable interference with an owner's or public's access to his property.' "  *Id.*, quoting *State ex rel. B&B Co. v. Toledo*, 6th Dist. No. L-81-309 (Mar. 19, 1982).

{¶ 9}   The complaint contains the following relevant allegations:

> 4. Until September 2013, Tiffin Avenue where Plaintiff's business is located was State Route 101.  In September 2013, the Defendant debuted a newly built overpass over Norfolk Southern railroad tracks on State Route 101 in the vicinity where Plaintiff's business is located.  This resulted in Tiffin Avenue where Plaintiff's business is located no longer being on State Route 101.

5. The changes in the street structure and route as a result of the newly built overpass and rerouting of State Route 101 have included the following: (a) At the south end of Tiffin Avenue the road is blocked by a guardrail at the Norfolk Southern railroad tracks. (b) At the north end Tiffin Avenue is no more because of the overpass coming down to meet the Venice Road intersection.

6. Prior to the changes a person traveling in a southern direction (from Sandusky) would see and enter the business from the intersection of Tiffin Road and Venice Avenue. Now, with the changes, a person traveling in a southern direction away from Sandusky must turn left at the guardrail and travel two blocks down [Sanford] Street, which is a very narrow residential street, to West Perkins Drive, turn right, travel two additional blocks to Pennsaeval Avenue, go around the curve on the right, then travel another block, and will then finally see and be able to enter the Tea House on the other end of Tiffin Road. A person traveling in a Northern direction toward Sandusky, coming over the new overpass and reaching the intersection of Tiffin Road [sic] and Venice Avenue, must turn right onto [Sanford] Street and then follow the same route as outlined above.

(Complaint, ¶ 4-6.)[1]

{¶ 10} Accepting the allegations in the complaint as true, the newly constructed State Route 101 overpass has resulted in a loss of Tea House revenue and a corresponding diminution in the value of appellant's real property occasioned by the following: (1) the relocation of former State Route 101 to the newly constructed State Route 101 overpass; and (2) the closing of Tiffin Avenue to the south of the Tea House at the railroad tracks. The complaint does not allege a physical interference with appellant's right of ingress or egress to Tiffin Avenue. Taking the complaint as true, appellant's access to Tiffin Avenue to and from the Tea House remains the same as it was prior to the construction of the overpass. Based on these facts, we must determine whether appellant's complaint states a claim for the taking of property without just compensation.

---

[1] Although the trial court accepted appellant's representation that the route between newly constructed State Route 101 and the Tea House is approximately 1.8 miles, there is no such allegation in the complaint.

### A. Relocation of State Route 101

{¶ 11} In *Merritt,* relators brought a mandamus action seeking an order compelling ODOT's director to appropriate and fix the value of real property allegedly taken when ODOT relocated a portion of the state highway that abutted relators' gas station, store, and restaurant. The property owner alleged a compensable taking due to the relocation of the highway which destroyed their easement of access to a publicly traveled highway. The stipulated facts revealed that the former state highway continued to be maintained as a county road and the landowners continued to have the same access to the roadway as they had prior to the project. The state also built access lanes connecting the old road with the new highway.

{¶ 12} In denying relators' application for a writ of mandamus, the Supreme Court of Ohio in *Merritt* applied the prevailing legal rule as follows:

> One of the principal claims of the relators as to damages to their property because of the relocation of the highway is that the relocation has diverted travel from the highway abutting their property to the new highway and has thus injuriously affected their business. This raises the question whether loss of trade and business to an owner of property abutting on an established highway, because of a diversion of traffic over such highway to a newly established, alternate highway, is a compensable injury chargeable to the highway authority.
>
> It is now an established doctrine in most jurisdictions that such an owner has no right to the continuation or maintenance of the flow of traffic past his property. The diminution in the value of land occasioned by a public improvement that diverts the main flow of traffic from in front of one's premises is noncompensable.

*Id.* at 103-04.

{¶ 13} As previously noted, the complaint in this case does not allege any physical interference with appellant's right of ingress or egress to Tiffin Avenue. Appellant has the same right of access to and from Tiffin Avenue as he had prior to the construction of the overpass. Nor does the complaint allege that the newly constructed overpass has eliminated access between the Tea House and State Route 101. The complaint acknowledges that access to State Route 101 is still available from both north and south of

the Tea House, albeit from a less convenient route than existed prior to the construction. The complaint also acknowledges that appellant continues to operate the Tea House on the property, albeit less profitably than before the construction of the overpass.

{¶ 14} Applying the rule of law in *Merritt* to the facts alleged in appellant's complaint leads us to the conclusion that the loss of business experienced by appellant due to the diversion of traffic from Tiffin Avenue onto the newly established State Route 101 overpass is not a compensable injury under Ohio law.  Appellant does not have a right to the continuation or maintenance of the flow of traffic past the Tea House.  Thus, to the extent that appellant's taking claim is based on the diversion of the traffic flow caused by ODOT's relocation of State Route 101, appellant's complaint fails to state a claim on which relief can be granted.  *Id.*

### B.  Closing of Tiffin Avenue

{¶ 15} Similarly, there is no merit in appellant's contention that the closing of Tiffin Avenue to the south of the Tea House resulted in a compensable taking of his property.  As the Supreme Court in *Merritt* stated: "Mere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress * * *, where any resulting interference is but an inconvenience shared in common with the general public and is necessary in the public interest to make travel safer and more efficient."  *Id.* at 102.[2]

---

[2] *See also Jackson v. Jackson*, 16 Ohio St. 163 (1865), paragraph two of the syllabus ("A claimant for damages in the alteration a road is not entitled to recover where such alteration merely renders the road less convenient for travel, without directly impairing his access to the road from the improvements on his land."); *New York, Chicago & St. Louis RR. Co. v. Bucsi*, 128 Ohio St. 134 (1934), paragraphs one and two of the syllabus (where the city completely closes a street a distance from its eastern terminus, "the owner of property abutting upon such street, but not upon the vacated portion thereof, has no right of action for damages * * * so long as his access to the city street system to the west is not impaired.  [T]he abutting property owner's damage, if any, differs in degree but not in kind from that of the general public."); *New Way Family Laundry, Inc. v. Toledo*, 171 Ohio St. 242, 243 (1960), paragraph three of the syllabus ("The construction of a divider strip in the middle of a highway resulting in the elimination of left turns from and into the abutting property and thereby permitting only right turns and requiring circuity of travel to leave or reach the opposite half of the highway does not constitute an actionable interference with the abutting property owner's right of ingress and egress.").  *But see Bowles v. Ohio Dept. of Transp.*, 10th Dist. No. 89AP-1426 (June 28, 1990), *appeal dismissed*, 62 Ohio St.3d 1202 (1991) (holding that a property owner's complaint alleging that the combination of ODOT's construction-related and repair-related road closures "[e]ffectively blocked access to plaintiffs' businesses from the general public and made access to said businesses virtually impossible from certain areas," was "sufficient to prevent a motion for judgment on the pleadings in favor of defendant").

*1. Inconvenience Shared by the General Public*

{¶ 16} The factual allegations of the complaint establish that the interference with appellant's right of access to the Tea House caused by the newly constructed State Route 101 overpass is but an inconvenience shared in common with the general public. In describing the route a motorist must travel from newly constructed State Route 101 to the Tea House, the complaint establishes that the circuity of travel to and from State Route 101 is an inconvenience shared by all surrounding residents. The complaint acknowledges that a motorist accessing the Tea House to or from the newly constructed State Route 101 overpass must travel through a residential neighborhood in order to access Tiffin Avenue. Appellant argues that a judgment on the pleadings in favor of ODOT is inappropriate at this early stage in the proceedings because it is reasonable to conclude from the complaint that the interference suffered by the Tea House is of a different kind than the inconvenience shared by the general public. Specifically, appellant claims that the profitability of his business is "highly dependent upon drive-by traffic." (Appellant's Brief, 8.)

{¶ 17} As noted above, the Supreme Court in *Merritt* held that an owner of property abutting on an established highway has no right to the continuation or maintenance of the flow of traffic past his property. *Id.* at 103-04. In *Salvation Army*, this court applied the *Merritt* decision to a case involving a partial road closure. In *Salvation Army*, the property owner alleged that ODOT's elimination of the right turn only lane located at the intersection of Winding Creek Road and State Route 32 resulted in a diminution of his property value because " 'customers traveling on Interstate 280 would have to drive an extra mile and a quarter to a mile and a half in order to reach his motel.' " *Id.* at ¶ 19, quoting *Smith v. Joseph*, 6th Dist. No. WD-85-40 (Jan. 24, 1986). In opposition to ODOT's motion for summary judgment, the property owner argued that ODOT's highway modification was "not an inconvenience shared in common with the general public by virtue of the fact no other businesses were affected, as no other businesses are located on [the subject street]." (Internal quotations omitted.) *Id.* at ¶ 20. In rejecting that argument, this court concluded that the highway modification was an inconvenience affecting all drivers using the intersection in question. *Id.*

{¶ 18} More recently, in *BDFM*, this court, applying the holdings in *Merritt* and *Salvation Army*, considered and rejected an argument similar to that made by appellant herein. In that case, the relator alleged that ODOT's construction of a median made travel between its property and eastbound Vine Street more difficult. The relator claimed that its injury was unique because the median "has caused economic damage to BDFM," deterring potential tenants from leasing office space and thereby "prevent[ing] BDFM from realizing the economic value attached to the property." *BDFM* at ¶ 18. In rejecting the property owner's argument, this court stated:

> BDFM's argument fails to acknowledge the difference between the differing analyses that apply to an alleged regulatory taking as opposed to an alleged physical taking, such as a denial of right of access. *See State ex rel. River City Capital v. Clermont Cty. Bd. of Commrs.*, 12th Dist. No. CA2010-07-051, 2011-Ohio-4039, ¶ 25 (holding "[t]wo main theories exist for establishing a taking, one based on land-use or zoning regulations and the other, on physical invasions by the government"); *State ex rel. Hilltop Basic Resources, Inc. v. Cincinnati,* 118 Ohio St.3d 131, 136, 2008-Ohio-1966 (distinguishing between physical and regulatory takings). To the extent BDFM's "economic damage" assertion has any relevance to a right of access taking, the fundamentally same argument was set forth and rejected in *Merritt* and *Salvation Army*. *Id.* at ¶ 32.

{¶ 19} Even if we were to infer from appellant's complaint that the success of the Tea House is dependent on drive-by traffic, the "economic damage" suffered by appellant as a result of the diversion of traffic away from Tiffin Avenue is not an interference with appellant's property right that is unique to appellant. *Merritt*; *Salvation Army*; *BDFM*. Accordingly, appellant's complaint fails to allege a compensable taking under Ohio law. *Merritt*; *Salvation Army*; *BDFM*.

### 2. *Public Interest to the Safety and Efficiency of Travel*

{¶ 20} In *BDFM*, this court noted that "ODOT is entitled to a rebuttable presumption that the median's installation, as an exercise of the state's police power, bears a real and substantial relation[ship] to the public health, safety, morals or general welfare of the public and was not unreasonable or arbitrary." *Id.* at ¶ 39, citing *Richley v. Jones*, 38 Ohio St.2d 64, 66 (1974). "[T]he 'landowner has the burden of showing any

capricious or unreasonable activity on the part of the state.' " *Id.*, quoting *Richley* at 66, fn. *See also Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954 (to rebut the presumption of validity, the property owner must show that the restriction is unreasonable and arbitrary or has no real or substantial relation to the public health, safety, morals, or general welfare).

{¶ 21} Appellant's complaint alleges only that ODOT "planned, implemented, and funded" the State Route 101 overpass project, that during a public meeting held in November 2012 "[appellant] asked an official of [ODOT] if Tiffin Avenue would be closed as a result of the upcoming planned changes," and that "[t]he official answered yes, telling [appellant] that [ODOT] could do as it wished." (Complaint, ¶ 7, 9.) The complaint does not allege that ODOT acted arbitrarily or unreasonably with respect to the public improvement at issue. Nor does the complaint contain facts which would support a reasonable inference that the construction of the State Route 101 overpass was unnecessary to the public interest in safety and efficiency of travel. Because the complaint does not allege facts sufficient to rebut the presumption that ODOT's construction of the State Route 101 overpass was necessary in the public interest to the safety and efficiency of travel, the complaint fails to allege a compensable taking under Ohio law. *Merritt*; *BDFM.*

{¶ 22} Based on the foregoing, it is our determination that appellant's complaint fails to allege facts which would support a compensable taking claim against ODOT. Accordingly, we hold that the Court of Claims did not err when it granted appellee's motion for judgment on the pleadings and dismissed appellant's complaint. Appellant's sole assignment of error is overruled.

## V. CONCLUSION

{¶ 23} Having overruled appellant's sole assignment of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

BROWN, P.J., and HORTON, J., concur.

———————————