[Cite as *State ex rel. Walgate v. Kasich*, 2017-Ohio-5528.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Robert L. Walgate, Jr., | : | |
| Plaintiff-Appellee, | : | |
| [Frederick C. Kinsey, | : | No. 16AP-737 |
| | | (C.P.C. No. 11CV-13126) |
| Plaintiff-Appellant], | : | |
| | : | (REGULAR CALENDAR) |
| v. | | |
| John R. Kasich et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 27, 2017

**On Brief:** *Black, McCuskey, Souers & Arbaugh, Thomas W. Connors* and *James M. Wherley*, for appellant *Frederick C. Kinsey*. **Argued:** *Thomas W. Connors.*

**On Brief:** *Michael DeWine*, Attorney General, and *Tiffany L. Carwile*, for appellee John R. Kasich. **Argued:** *Tiffany L. Carwile.*

**On Brief:** *Michael DeWine*, Attorney General, *Peter M. Thomas, Charles E. Febus* and *Micahel A. Rzymek*, for appellees Ohio Casino Control Commission, Chairman Jo Ann Davidson, Vice Chairman June E. Taylor, Executive Director Matt Schuler, and Commissioners Martin R. Hoke, Ranjan Manoranjan, Will Lucas, John S. Steinhauer, and McKinley E. Brown.

**On Brief:** *Calfee, Halter & Griswold LLP, Christopher S. Williams, James F. Lang, Matthew M. Mendoza* and *Alexander B. Reich*, for intervening appellees Jack Ohio LLC,

JACK Cleveland Casino LLC, and JACK Cincinnati Casino LLC.

**On Brief:** *Ice Miller, LLP, Matthew L. Fornshell, John H. Oberle* and *Albert G. Lin*, for intervening appellees Central Ohio Gaming Ventures, LLC and Toledo Gaming Ventures, LLC.

APPEAL from the Franklin County Court of Common Pleas

TYACK, P.J.

{¶ 1} Plaintiff-appellant, Frederick C. Kinsey ("appellant"), appeals from the September 26, 2016 judgment of the Franklin County Court of Common Pleas, granting defendants-appellees, John R. Kasich, Governor of Ohio et al. and intervening defendants-appellees, Ohio Gaming Ventures, LLC's et al. (collectively "appellees") motions for judgment on the pleadings. For the reasons that follow, we affirm the judgment of the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} This case originated on October 21, 2011 as a multi-plaintiff, multi-claim challenge to state constitutional, legislative, and administrative provisions related to gambling in the state both at casinos and race tracks. On January 3, 2012, the plaintiffs filed an amended complaint naming as defendants, Governor John R. Kasich; the State Lottery Commission; the interim director and members of the State Lottery Commission; the Casino Control Commission; the chairman, vice chairman, executive director, and members of the Casino Control Commission, and Ohio Tax Commissioner Joseph W. Testa ("state defendants"). (Am. Compl. at ¶ 11-20.) *State ex rel. Walgate v. Kasich*, 147 Ohio St.3d 1, 2016-Ohio-1176, ¶ 7. The amended complaint raised 17 claims. *Id.* at ¶ 8. The final claim in the amended complaint is that Article XV, Section 6 of the Ohio Constitution and related legislative enactments violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by granting a monopoly to the gaming operators whom the state approved. *Id.* at ¶ 10.

{¶ 3} A number of gaming operators filed motions to intervene as well as motions for judgment on the pleadings. *Id.* at ¶ 12. The trial court granted the motions to intervene. (Feb. 24, 2012 Decision and Entry.)

{¶ 4} The state defendants moved the trial court to dismiss the entire action for lack of standing and failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6). *State ex rel. Walgate v. Kasich*, 2016-Ohio-1176 at ¶ 13.

{¶ 5} The trial court granted the state's motion to dismiss for lack of standing and this court affirmed the trial court's judgment. *Id.* at ¶ 14, 15; *State ex rel. Walgate v. Kasich*, 10th Dist. No. 12AP-548, 2013-Ohio-946. The standing challenge was appealed to the Supreme Court of Ohio, and the court concluded that one plaintiff, appellee Frederick Kinsey, had standing to maintain his equal protection claim. *State ex rel. Walgate v. Kasich*, 2016-Ohio-1176 at ¶ 1, 52. Appellee had alleged in the amended complaint that:

> He is being deprived of the right to exercise the trade or business of casino gaming in Ohio by Art. XV, § 6 (C) of the Ohio Constitution. He would engage in casino gaming in Ohio but for the provisions of Art. XV, § 6(C) which grant a special and exclusive privilege to engage in casino gaming in Ohio to two gaming corporations.

(Am. Compl. at ¶ 10.)

{¶ 6} The Supreme Court of Ohio remanded the case to the trial court stating:

> We specifically reverse the Tenth District's judgment only to the extent that it affirms the trial court's dismissal of Kinsey's equal protection claim, and we remand to the Franklin County Court of Common Pleas for further proceedings on that claim.

*Id.* at ¶ 52.

{¶ 7} On remand, appellees filed answers and motions for judgment on the pleadings arguing that appellant had not stated a claim under the equal protection clause. In his response, appellant also alleged that he had pled a claim under the privileges and immunities clause of the Fourteenth Amendment to the United States Constitution.

{¶ 8} The trial court granted appellees' motions, finding that Article XV, Section 6(C) was rationally related to two legitimate state interests: (1) regulating casino gaming

as a vice activity, and (2) promoting the economic development of the state. Therefore, the trial court concluded that appellant could not sustain his equal protection claim.

{¶ 9} The trial court also found that appellant had failed to plead a claim for violation of the privileges and immunities clause of the Fourteenth Amendment.

## II. ASSIGNMENTS OF ERROR

{¶ 10} This appeal ensued, with appellant assigning the following as error:

> 1. The trial court erred in granting appellees' motion for judgment on the pleadings on appellant's equal protection claim.
>
> 2. The trial court erred in dismissing appellant's privileges and immunities claim for failure to state a claim.

## III. STANDARD OF REVIEW

{¶ 11} Civ.R. 12(C) states that "[a]fter the pleadings are closed but within such times as not to delay the trial, any party may move for judgment on the pleadings." Dismissal under Civ.R. 12(C) is appropriate when the court: "(1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996), citing *Lin v. Gatehouse Constr. Co.*, 84 Ohio App.3d 96, 99, (8th Dist.1992); *see also*, *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165-66 (1973). Therefore, Civ.R. 12(C) requires the court to determine that there are no material issues of fact and that the movant is entitled to judgment as a matter of law. *Pontious* at 570, citing *Burnside v. Leimbach*, 71 Ohio App.3d 399, 403 (10th Dist.1991). A judgment on the pleadings dismissing an action is subject to a de novo standard of review in the court of appeals. *Smith v. Ohio Dept. of Transp.*, 10th Dist. No. 15AP-521, 2015-Ohio-5240, ¶ 6.

## IV. ANALYSIS

### A. Equal Protection Claim

{¶ 12} Ohio Constitution, Article XV, Section 6(C)(1) provides, as follows:

> Casino gaming shall be authorized at four casino facilities (a single casino at a designated location within each of the cities of Cincinnati, Cleveland, and Toledo, and within Franklin

> County) to create new funding for cities, counties, public school districts, law enforcement, the horse racing industry and job training for Ohio's workforce.

The constitutional provision also provides for the creation of the Ohio casino control commission "which shall license and regulate casino operators * * * and all gaming authorized by section 6(C), to ensure the integrity of casino gaming." Ohio Constitution, Article XV, Section 6(C)(4).

{¶ 13} The Ohio Constitution further requires "each initial licensed casino operator of each of the four casino facilities to pay an upfront license fee of fifty million dollars ($50,000,000) per casino facility for the benefit of the state * * * used to fund state economic development programs which support regional job training efforts to equip Ohio's workforce with additional skills to grow the economy." Ohio Constitution, Article XV, Section 6(C)(4). The constitutional provision further provides for a detailed scheme for taxation of casino revenue and distribution of the casino tax proceeds. Ohio Constitution, Article XV, Section 6(C)(2) and (3).

{¶ 14} In addition:

> Each initial licensed casino operator of each of the four casino facilities shall make an initial investment of at least two hundred fifty million dollars ($250,000,000) for the development of each casino facility for a total minimum investment of one billion dollars ($1,000,000,000) statewide. A casino operator: (a) may not hold a majority interest in more than two of the four licenses allocated to the casino facilities at any one time: and (b) may not hold a majority interest in more than two of the four casino facilities at any one time.

Ohio Constitution, Article XV, Section 6(C)(5).

{¶ 15} Statutes and regulations enacted after the passage of the constitutional amendment require casino operators to meet strict requirements for licensure including reputation, business experience, financial integrity, criminal history, good character, the ability to maintain adequate insurance, payment of a nonrefundable application fee of $1,500,000, and to provide a $1,000,000 surety bond. *See generally*, R.C. 3772.10; Ohio Adm.Code: 3772-4.

{¶ 16} In the amended complaint, appellant alleged that "Art. XV, § 6 (C) of the Ohio Constitution, H.B. 1, H.B. 519 and H.B. 277 grant a monopoly to the gaming companies signing the MOU [Memorandum of Understanding], on casino gaming and related activity in the areas identified therein." (Am. Compl. at ¶ 120.) A memorandum of understanding was attached to the amended complaint as an exhibit. (Am. Compl., Ex. B.) The memorandum of understanding was signed by a senior advisor to the Governor of Ohio, the President and COO of Penn National Gaming, Inc., and the Chairman and CEO of Rock Ohio Ceasars, LLC. *Id.*

{¶ 17} The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

{¶ 18} " 'The Equal Protection Clause protects against arbitrary classifications, and requires that similarly situated persons be treated equally.' " *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir.2010), quoting *Bowman v. United States*, 564 F.3d 765, 772 (6th Cir.2008). "Thus, '[t]o state an equal protection claim, a party must claim that the government treated similarly situated persons differently.' " *Id.*, quoting *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564 (6th Cir.2008).

{¶ 19} In his first assignment of error, appellant argues that limiting casino gambling to four specific properties owned or controlled by two gaming corporations is not rationally related to a legitimate government purpose. Appellant concedes that the appellees' proffered purposes for the classification, regulating gambling and promoting economic development, fall within the scope of the state's police power. However, appellant contends that appellees have failed to articulate why permitting two specified companies, as opposed to other companies, would advance the purposes of limiting the negative effects of gambling or provide for economic development.

{¶ 20} Appellant concedes that the appropriate level of review for the classification at issue is whether the provision is rationally related to a legitimate state interest. *See*

*Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, ¶ 18; *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

{¶ 21} When, as here, social or economic legislation is at issue, the equal protection clause allows the states wide latitude. *Id.* Under the rational-basis standard, the state is under no obligation to produce evidence to sustain the rationality of the classification. *Pickaway Cty. Skilled Gaming* at ¶ 20. Thus, the state's decision to regulate casino gambling by limiting such gambling to properties owned or controlled by two gaming companies will be sustained " 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' " *Northville Downs* at 586 quoting *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313 (1993).

{¶ 22} Those attacking the rationality of the classification have the burden to negate every conceivable basis which might support it. *Id.* at 315; *Pickaway Cty. Skilled Gaming* at ¶ 20. " 'A classification does not fail rational-basis review because "it is not made with mathematical nicety or because in practice it results in some inequality." ' " *Id.*, quoting *Heller v. Doe*, 509 U.S. 312, 321 (1993), quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911). Here, as quoted above, the text of the casino amendment expressly cites economic development and regulation of gaming to insure the integrity of casino gaming as important purposes served by the amendment. At the same time, the amendment limits the universe of casino gaming to four specific locations in the state. Appellant conceded at oral argument that a location restriction does not violate the equal protection clause if such a restriction serves a legitimate governmental purpose. Here, only four cities and locales are allowed to have casinos, and while there may be other locations in Ohio that would like to have a casino, appellees argue that this location restriction satisfies rational-basis review as it regulates gaming and protects the health and welfare of the public.

{¶ 23} Because the state, as part of its police power, could, and at one time did, outlaw casino gambling altogether, it is permissible for the government to take the less inclusive step of allowing the conduct but reducing the demand through restrictions. *Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 341 (1986).

{¶ 24} The amendment and related legislation further restricts the universe of corporations or individuals who can operate the casinos to those who can meet extremely

stringent business, financial, and character requirements. Currently, appellant alleges that two gaming operators control the four specific casino properties and this constitutes unconstitutional economic protectionism and has no other legitimate state purpose.

{¶ 25} As noted above, the amendment limits the number of licensed casino operators in the state to no fewer than two of the four available licenses. "A casino operator: (a) may not hold a majority interest in more than two of the four licenses allocated to the casino facilities at any one time: and (b) may not hold a majority interest in more than two of the four casino facilities at any one time." Ohio Constitution, Article XV, Section 6(C)(5).

{¶ 26} "[The] states may make fine distinctions in regulating gaming, up to and including favoring certain forms of gambling over others." *Northville Downs* at 588. Thus, while seeking to promote casino gaming to further economic development, the state may also seek to restrict gambling as part of its police power to protect the health, safety, and welfare of its citizens. *Posadas de Puerto Rico* at 341; *Northville Downs* at 587; *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712, 739-42 (9th Cir.2003).

{¶ 27} Here, restricting the number of locations to four and the number of operators to no fewer than two may result in some inequality, but a classification does not fail rational-basis review because in practice it results in some inequality. *Pickaway Cty. Skilled Gaming* at ¶ 32. As the Supreme Court of the United States has recognized, the creation of a monopoly, in and of itself, does not give rise to an equal protection claim when the monopoly is an appropriate exercise of the state's police power. *Pacific States Box & Basket Co. v. White*, 296 U.S. 176, 184 (1935).

{¶ 28} A number of cases in the area of gambling regulation have recognized this principle. For example, in *Artichoke Joe's California Grand Casino* at 718, a California amendment limited casino location to "Indian lands" and restricted casino ownership to "Indian tribes." The Ninth Circuit Court of Appeals held that such a preference did not violate the equal protection clause even though it granted Indian tribes a monopoly on certain types of gaming. The court held that the amendment was rationally related to the goals of encouraging tribal autonomy and economic development.

{¶ 29} In *Northville Downs* at 587, the Sixth Circuit Court of Appeals determined that the Michigan Constitution that limited casino gambling to three casinos in Detroit

was rationally related to the economic goal of revitalizing Detroit with casino gambling and the state's legitimate interest in regulating gambling.

{¶ 30} Similarly, in *Hope for Families & Community Serv. v. Warren*, 721 F.Supp.2d 1079, 1150 (M.D. Ala.2010), the effect of the regulations at issue was to allow only four bingo licenses and grant a monopoly over electronic bingo operations. Nevertheless, the court held that regulation of gaming to protect the health, safety or welfare of its citizens was a legitimate government interest as was economic development.

{¶ 31} Appellant is essentially arguing that everyone must be permitted to operate a casino or no one can. Appellant relies on *Craigmiles v. Giles*, 312 F.3d 220 (6th Cir.2002) for the proposition that economic protectionism cannot survive equal protection scrutiny. In *Craigmiles*, the Sixth Circuit Court of Appeals held that a Tennessee statute that prohibited the sale of caskets by anyone other than a state-licensed funeral director failed rational basis review because the statute's only purpose was to protect a discrete interest group (funeral directors) from economic competition, and that was not a legitimate state interest. *Id.* at 224. Businesses that sold caskets but did not provide funeral services were effectively cut off from competition. However, where a provision does not, on its face, protect a discrete interest group from economic competition, *Craigmiles* does not apply. *Northville Downs* at 587.

{¶ 32} "Where there exists an appropriate connection to the state's police power, even the grant of a monopoly does not, in itself, offend equal protection principles." *Artichoke Joe's* at 736. Here, the state has set forth the legitimate governmental interests of regulating gaming and pursuing economic development by limiting where casinos may be located to four locations in the state and further requiring that no fewer than two licensed casino operators can operate the state's casinos.

{¶ 33} While one effect of the amendment may be to protect the current license holders from additional competition, that is not the only basis for the amendment. The appellees have shown that the state seeks to regulate gambling to promote the public welfare, while at the same time to allow casino gambling to encourage economic development within the state. This is a proper exercise of the state's police power and the two rationales are legitimate governmental interests. Thus, under a rational basis review,

appellant has failed to negate every conceivable basis that might support the casino amendment and related legislation.

{¶ 34} Accordingly, the first assignment of error is overruled.

### B. Privileges and Immunities Clause Claim

{¶ 35} In his second assignment of error, appellant argues that he has stated a claim for a violation of the privileges and immunities clause of the Fourteenth Amendment to the United States Constitution. Appellant contends that by quoting the Fourteenth Amendment in the seventeenth claim in his amended complaint, incorporating the facts alleged in the statement of facts, and alleging that the grant of monopoly violates the Fourteenth Amendment, he has sufficiently pled a violation of the privileges and immunities clause.

{¶ 36} The Fourteenth Amendment, Section 1, prohibits the states from making laws which would abridge "the privileges or immunities of citizens of the United States." Appellant acknowledges that the *Slaughter-House Cases*, 83 U.S. (16 Wall) 36 (1872), restricted the coverage of this clause to only those rights peculiar to being a citizen of the federal government, and that it does not protect those rights which relate only to state citizenship. Appellant argues that the fact that this clause is largely dormant does not preclude an argument that the clause could be applicable given Justice Thomas' pronouncements on the applicability of the clause in *Saenz v. Roe*, 526 U.S. 489, 521 (1999) (Thomas, dissenting). Thus, appellant seeks to preserve the issue in the event this case eventually reaches the United States Supreme Court.

{¶ 37} Appellees argue that the court of common pleas correctly dismissed the alleged claim under the privileges and immunities clause for three reasons. First, the seventeenth claim in the amended complaint is titled "grant of monopoly," and merely argues that the Casino Amendment violates the Fourteenth Amendment to the United States Constitution. (Am. Compl. at ¶ 118-21.) This is the reason the trial court gave for dismissing the claim. (Sept. 26, 2016 Decision & Entry at 9, n. 5.) Appellees argue that simply quoting the provisions of the Fourteenth Amendment is insufficient to provide notice that appellant is relying on the privileges and immunities clause.

{¶ 38} Second, even though appellant asserted before the Supreme Court of Ohio that he had standing to allege claims under the privileges and immunities clause and the

equal protection clause, the Supreme Court of Ohio clearly and specifically restricted appellant's claim on remand to the equal protection claim. The Supreme Court of Ohio stated: "We specifically reverse the Tenth District's judgment only to the extent that it affirms the trial court's dismissal of Kinsey's equal protection claim, and we remand to the Franklin County Court of Common Pleas for further proceedings on that claim." *State ex rel. Walgate*, 2016-Ohio-1176 at ¶ 52.

{¶ 39} Third, appellees argue that under precedent established by the *Slaughter-House Cases*, 83 U.S. (16 Wall) 36 (1872), the right to pursue or exercise a trade is not a privilege or immunity of American citizenship and therefore, appellant's claim under the privileges and immunities clause of the Fourteenth Amendment must fail on the merits.

{¶ 40} We find that the Supreme Court of Ohio unequivocally limited the scope of the remand to appellant's equal protection claim only. *State ex rel. Walgate*, 2016-Ohio-1176 at ¶ 52. Accordingly, the second assignment of error is overruled.

## V. CONCLUSION

{¶ 41} Based on the foregoing, the two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.