[Cite as *Sherman v. Ohio Pub. Emps. Retirement Sys.*, 2019-Ohio-278.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jeffrey P. Sherman, | : | |
| Plaintiff-Appellant, | : | No. 18AP-181 |
| | | (C.P.C. No. 17CV-6815) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Public Employees Retirement System, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on January 29, 2019

**On brief:** *Dworken & Bernstein Co., L.P.A., Patrick J. Perotti, Nicole T. Fiorelli,* and *Frank A. Bartela,* for appellant.
**Argued:** *Nicole T. Fiorelli*

**On brief:** [*Dave Yost*]*,* Attorney General, and *Benesch, Friedlander, Coplan & Aronoff LLP, John F. Stock,* and *Mark D. Tucker,* special counsel for appellee. **Argued:** *Mark D. Tucker*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

Plaintiff-appellant, Jeffery P. Sherman, appeals from a judgment entry of the Franklin County Court of Common Pleas granting the motion to dismiss of defendant-appellee, Ohio Public Employees Retirement System ("OPERS"), for failure to state a claim. For the following reasons, we reverse.

**I. Facts and Procedural History**

On July 28, 2017, Sherman filed a complaint alleging OPERS violated his right to equal protection under the Ohio Constitution by reducing his health insurance subsidy

while continuing to provide the full subsidy to other similarly situated OPERS retirees. According to the complaint, Sherman retired from an OPERS-covered position with the Ohio Department of Taxation on May 31, 2009. In May 2010, Sherman was reemployed by the Regional Income Tax Agency ("RITA"), another OPERS-covered position, as a part-time attorney.

The complaint further alleges that in 2016, OPERS withheld $74.00 of Sherman's health insurance premium monies each month, resulting in Sherman paying $106.54 per month for health insurance instead of $32.54 per month. The reason these monies were withheld was, according to the complaint, solely because Sherman was reemployed in an OPERS-covered position. Sherman alleges that OPERS retirees who are reemployed in non-OPERS-covered positions receive their maximum health insurance premium monies whereas OPERS denied Sherman a significant portion of his monies solely because he gained reemployment in an OPERS-covered position.

In 2017, OPERS again withheld $74 of Sherman's health insurance premium monies each month, resulting in Sherman paying $192 for health insurance each month instead of $118 per month. Pursuant to the complaint, OPERS's stated reason for treating reemployed retirees differently is "the administrative feasibility of identifying retirees who are re-employed in non-[OPERS-]covered positions." (Compl. at 4.)

In the complaint, Sherman sought class certification on behalf of all OPERS retirees for whom OPERS withheld a portion of their health insurance premium monies from January 1, 2016 to the present due to their reemployment in an OPERS-covered position. Additionally, Sherman sought a declaratory judgment and equitable relief in the form of restitution of the monies withheld.

In response to the complaint, on September 21, 2017, OPERS filed a Civ.R. 12(B)(6) motion to dismiss. OPERS argued that it is the policy of the state of Ohio to discourage "double-dipping," which OPERS defined as receiving taxpayer-supported compensation while also receiving a public pension. (Mot. to Dismiss at 2.) OPERS asserted that this policy serves to preserve state money and, therefore, was a sufficient rational basis for the difference in treatment between Sherman and other reemployed OPERS retirees who have gained reemployment in non-OPERS-covered positions.

The trial court, in a February 14, 2018 decision and entry, granted OPERS's motion to dismiss. The trial court concluded that OPERS retirees who obtain reemployment with a private employer are not similarly situated to OPERS retirees who obtain reemployment with an OPERS participating employer. The trial court additionally found that even if the groups were similarly situated, OPERS was nonetheless entitled to dismissal because OPERS set forth a rational basis for the classification and Sherman did not maintain his burden of negating every possible basis which might support the classification. Sherman timely appeals.

## II.  Assignments of Error

Sherman sets forth the following errors for our review:

> [1.] The trial court erred in holding that OPERS retirees re-employed in the private sector are not similarly situated to OPERS retirees re-employed in an OPERS-covered position.

> [2.] The trial court erred in holding that saving money by means of an *arbitrary* classification provides a rational basis for that classification.

(Emphasis sic.)

## III.  Standard of Review

Under Civ.R. 12(B)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. A Civ.R. 12(B)(6) motion to dismiss tests the sufficiency of a complaint. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975). In ruling on a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must construe the complaint in the light most favorable to the plaintiff, presume all factual allegations in the complaint are true, and make all reasonable inferences in favor of the plaintiff. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). The dismissal of a complaint for failure to state a claim is proper when it appears, beyond doubt, that the plaintiff can prove no set of facts entitling him to relief. *Celeste v. Wiseco Piston*, 151 Ohio App.3d 554, 2003-Ohio-703, ¶ 12 (11th Dist.). When reviewing a decision on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, this court's standard of review is de novo. *Foreman v. Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-15, 2014-Ohio-2793, ¶ 9.

## IV.  First Assignment of Error – Similarly Situated

In his first assignment of error, Sherman argues the trial court erred in concluding that OPERS retirees reemployed in an OPERS-covered position are not similarly situated to OPERS retirees reemployed in a non-OPERS-covered position.

The Equal Protection Clause of the Ohio Constitution provides, in pertinent part, "[a]ll political power is inherent in the people.  Government is instituted for their equal protection and benefit."  Ohio Constitution, Article I, Section 2.  Generally, equal protection requires that similarly situated persons be treated similarly under the law. *State v. Lawson*, 10th Dist. No. 12AP-771, 2013-Ohio-2111, ¶ 18.  "The comparison of only similarly situated entities is integral to an equal protection analysis."  *GTE North, Inc. v. Zaino*, 96 Ohio St.3d 9, 2002-Ohio-2984, ¶ 22.  "But the Equal Protection Clause 'does not require things which are different in fact * * *  to be treated in law as though they were the same.' " *Id.*, quoting *Tigner v. Texas*, 310 U.S. 141, 147 (1940).  Thus, to state an equal protection claim, a party must claim that the government treated similarly situated persons differently.  *State ex rel. Walgate v. Kasich*, 10th Dist. No. 16AP-737, 2017-Ohio-5528, ¶ 18.

Sherman asserts that, in all relevant respects, OPERS retirees who are employed in OPERS-covered positions are similarly situated to OPERS retirees who are employed in the private sector.  According to Sherman, both groups needed health insurance, were OPERS retirees, and qualified for the OPERS health insurance premium subsidy.  Both groups are treated the same by the General Assembly and OPERS in that neither group is denied a pension by virtue of their reemployed status.  Additionally, Sherman argues that no public policy exists to deter OPERS retirees from seeking reemployment in an OPERS-covered position.  To the contrary, Sherman notes that R.C. 145.38 expressly recognizes than an OPERS retiree may return to employment in an OPERS-covered position.

OPERS responds that the groups are not similarly situated because retirees such as Sherman who are reemployed by an OPERS-covered employer are receiving a second source of taxpayer-supported compensation and benefits. OPERS argues that the General Assembly distinguishes between publicly and privately reemployed retirees so as to deter "double-dipping" in public employment.  According to OPERS, the $74 subsidy reduction is designed to maintain the fiscal health and stability of the public pension fund.

R.C. 145.38(B)(1) states, in pertinent part, that "[an OPERS] retirant or other system retirant may be employed by a public employer."  However, an OPERS retiree who has received a retirement allowance for less than two months when he or she becomes reemployed in an OPERS-covered position must forfeit the retirement allowance for any month he or she is employed prior to the expiration of a two-month period.  R.C. 145.38(B)(4)(a).  This provision is not designed to discourage a return to public employment; rather, the intention of the statute is to ensure that the public employee has terminated service before receiving retirement benefits.  *State ex rel. O'Grady v. Griffing*, 140 Ohio St.3d 290, 2014-Ohio-3687, ¶ 14.  "[A] public employee must terminate service before receiving retirement benefits."  *Id.*  "A public employee need not leave public employment permanently, but may terminate employment for purposes of OPERS retirement and then be reemployed immediately, upon forfeiting two months of benefits."  *Id.*, citing R.C. 145.38(B).  During that period of forfeiture, an OPERS retiree is not eligible to receive pre-Medicare healthcare coverage.  Ohio Adm.Code 145-4-30.

The state of Ohio does not have a general policy of discouraging OPERS retirees from returning to public employment.  Moreover, the General Assembly has not acted to deny Sherman or others like him who resume public employment from receiving any portion of their OPERS pensions while employed as a new OPERS-covered employee.  While OPERS points to a number of statutory provisions that apply to reemployed OPERS retirees in support of its argument that these classifications are not similarly situated, none appear designed to deter subsequent employment or receiving a second source of taxpayer-supported compensation.

R.C. 145.38(D)(1) provides that a reemployed OPERS retiree cannot become a member of OPERS upon reemployment with an OPERS-covered employer.  Instead, an OPERS retiree employed with an OPERS employer contributes a portion of his compensation to the public retirement system, and his employer contributes to the system as well.  R.C. 145.38(B)(1).  The employee's contributions and an amount of the employer's contributions determined by the OPERS board are placed into a money purchase annuity account payable upon re-retirement.  *See* R.C. 145.384.  We do not find that these statutory provision are designed to discourage further public employment or "double-dipping," as OPERS argues.

Further, R.C. 145.38(B)(2) provides that a public employer that employs an OPERS retiree must notify OPERS of the retiree's reemployment and is responsible for any overpayment of benefits resulting from a delay or failure to notify OPERS promptly. Again, while this statute contemplates reemployment of OPERS's retirees, it does not operate to discourage further public employment.

Additionally, R.C. 145.38(D)(2) requires an OPERS-covered employer to provide primary health insurance coverage to a reemployed OPERS retiree if it offers health insurance coverage to comparable employees. The OPERS retiree insurance coverage must be secondary to the employer's primary coverage but the OPERS-covered employer would be providing this benefit to the employee regardless of who filled this position. Here, however, Sherman was a part-time employee of RITA and thus was not eligible for health coverage from his new employer.

" '[M]ost laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all *relevant* respects alike.' " (Emphasis added.) *Harsco Corp. v. Tracy*, 86 Ohio St.3d 189, 192 (1999), quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). If a distinction between an apparent classification is not a relevant distinction, a government actor will not be able to defeat an equal protection claim on the grounds that the two groups are not similarly situated. *MCI Telecommunications Corp. v. Limbach*, 68 Ohio St.3d 195 (1994) (finding that the distinction the tax commissioner was using to treat MCI Telecommunications differently was not a relevant distinction, the two taxpayers were being treated differently, and thus MCI Telecommunications was denied equal protection of the laws).

In Ohio, there is no general policy of discouraging OPERS retirees from returning to work in OPERS-covered positions. Unlike New York law, which OPERS references in its brief, the Ohio General Assembly has not attempted to discourage OPERS retirees from seeking government work by denying them pension benefits while they are reemployed in the public sector. *See Slavsky v. New York City Police Dept.*, 967 F.Supp. 117, 119-20 (S.D.N.Y.1997).

Under Ohio's statutory framework, when an OPERS retiree becomes reemployed in an OPERS-covered position, OPERS is only providing one stream of taxpayer-

supported compensation: an OPERS pension.  The OPERS pension is the identical stream of taxpayer-supported compensation that is provided to reemployed OPERS retirees who return to work in the private sector.  Without a public policy or legislation prohibiting "double-dipping," the payment of an OPERS pension and an OPERS salary to the same person is not a relevant distinction for equal protection purposes.  Regardless of who fills the position, the employer must pay the salary and benefits.  The employee's status as an OPERS retiree does not impose any additional costs to the state.  However, the result of OPERS's policy of withholding a portion of the retiree's health insurance premium subsidies is that certain OPERS retirees are being treated differently.

Thus, we conclude Sherman and other OPERS retirees who gain reemployment in an OPERS-covered position are similarly situated to those OPERS retirees who gain reemployment in non-OPERS-covered positions for purposes of an equal protection analysis.  Accordingly, the trial court erred when it concluded that Sherman was not similarly situated to other reemployed OPERS retirees.  We sustain Sherman's first assignment of error.

**V.  Second Assignment of Error – Rational Basis Test**

In his second assignment of error, Sherman argues the trial court erred in concluding OPERS set forth a rational basis for the classification and granting OPERS's motion to dismiss on that basis.

A governmental classification that does not involve a fundamental right or a suspect class is accorded a strong presumption of validity.  *Heller v. Doe*, 509 U.S. 312, 319 (1993).  Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.  *Id.* at 320.  Thus, a classification must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.  *Id.*; *Am. Assn. of Univ. Professors, Central State Univ. Chapter v. Central State Univ.*, 87 Ohio St.3d 55, 58 (1999).  A rational relationship exists under rational-basis review if the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.  *Id.*

A court may dispose of an equal protection claim on a Civ.R. 12(B)(6) motion to dismiss if it can be shown that there is a reasonably conceivable state of facts that could

provide a rational basis for the classification. *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter* at 58. *See also Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir.1999); *Barnesville Edn. Assn. OEA/NEA v. Barnesville Exempted Village School Dist. Bd. of Edn.*, 7th Dist. No. 06 BE 32, 2007-Ohio-1109, ¶ 45.

A classification does not fail rational basis review because it is not made with mathematical nicety or because in practice it results in some inequality. *Heller* at 321; *State ex rel. Horvath v. State Teachers Retirement Bd.*, 83 Ohio St.3d 67, 75 (1998). Sherman asserts that because Ohio has no public policy against "double-dipping," it is not rational for the state to seek to save money by means of an arbitrary classification that penalizes some OPERS retirees but not others.

Preserving state money can be a legitimate state purpose that serves as a rational reason for creating a particular classification. *Roseman v. Firemen & Policemen's Death Benefit Fund*, 66 Ohio St.3d 443, 450 (1993). However, under Ohio law, "when preserving state money is accomplished by treating an individual in an arbitrary manner, it is not a rational reason to classify." *Adamsky v. Buckeye Local School Dist.*, 73 Ohio St.3d 360, 362 (1995).

Here, the trial court held that protecting the public fisc is a rational basis for the challenged classification. It noted that Sherman, as the party attacking the rationality of the classification, has the burden to negate every conceivable basis which might support it. *Walgate* at ¶ 22. While the trial court is correct that Sherman would have the burden of attacking the rationality of the basis for the classification once it is set forth, the trial court's analysis ignores the threshold responsibility of the party supporting the rationality of the classification to explain *how* the classification acts in furtherance in the stated rational basis. OPERS has not identified how this policy is reasonably related to its stated rational basis of protecting the public fisc. If we are unable to make a causal link between the existence of a policy and the rational basis of that policy, we cannot say it appears "beyond doubt" from the complaint that Sherman could prove no set of facts warranting the requested relief. *State ex rel. Turner v. Houk*, 112 Ohio St.3d 561, 2007-Ohio-814, ¶ 5.

Here, OPERS asserts that the state's legitimate state interest in preserving state money would be furthered by doing so in a manner that reduces administrative burdens attributable to where OPERS retirees gain reemployment. OPERS does not explain how

this policy reduces administrative burdens in a way that links the classification to the stated goal of protecting the public fisc. We are mindful that "[t]he state does not bear the burden of proving that some rational basis justifies the challenged legislation," and our analysis here is not intended to shift the burden from the challenger of the legislation back to the state. *State v. Williams*, 88 Ohio St.3d 513, 531 (2000). While Sherman's burden to negate every conceivable basis for the classification remains intact, it was erroneous for the trial court to grant OPERS's motion to dismiss when OPERS did not provide enough information in its motion to trigger Sherman's burden in the first instance. *See State ex rel. Doersam v. Indus. Comm.*, 45 Ohio St.3d 115, 120 (1989) (noting apellant's failure to explain *how* its stated objective would apply to its proposed classification).

We also emphasize the crucial role a Civ.R. 12(B)(6) motion to dismiss plays in an equal protection challenge. OPERS's motion fails here, under this particular record, not because these motions generally require more evidentiary support in the record, a notion fundamentally at odds with the procedural tool of a Civ.R. 12(B)(6) motion, but because OPERS's motion was deficient. Moreover, this decision should not be construed to compel the conclusion that OPERS's classification is arbitrary; instead, we hold simply that OPERS did not provide enough information in its motion either for Sherman to attempt to negate every conceivable basis or for the trial court to say that there exists a rational basis for the classification sufficient to overcome an equal protection challenge. Because OPERS failed to make a connection between its classification and its desire to protect the public fisc, dismissal at this juncture was inappropriate.

Having concluded that the trial court erred in granting OPERS's Civ.R. 12(B)(6) motion to dismiss, we sustain Sherman's second assignment of error.

## VI. Disposition

Based on the foregoing reasons, the trial court erred in granting OPERS's motion to dismiss. Having sustained Sherman's two assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand for further proceedings consistent with this decision.

*Judgment reversed; cause remanded.*

SADLER, J., concurs.
TYACK, J., concurs in judgment only.